Hobart v. Beers.

*3. Verdict valuing goods in bulk, when not error.*

---

B. F. HOBART, *et al.,* v. H. R. BEERS, *et al.*

1. ACTION FOR RAILROAD TIES, ETC., *When not Conclusive as to Title.* In 1872, plaintiffs entered into a contract with the M. C. & N. W. Rld. Co. to furnish ties and timber for the construction of its road from Minersville, Missouri, to Oswego, Kansas. The contract provided for the delivery of the ties and timber along the right of way, subject to inspection and acceptance of the chief engineer of the company. Pursuant to such contract they did deliver a large amount of ties and timber, which actually went into the construction of the road-bed between Minersville and Brownsville, Kansas. When the track had reached Brownsville the company became bankrupt, and stopped work. Beyond Brownsville, and between it and Oswego, plaintiffs had placed along the right of way other ties and timber. Thereafter plaintiffs, believing that they could

Hobart v. Beers.

enforce a mechanics' lien for all material delivered and used in the construction of the road-bed within the limits of the state, filed a statement for a lien with the clerk of the district court of Cherokee county, and commenced suit to foreclose such attempted lien. The petition counted on ties and timber *delivered* and *accepted.* It alleged that the ties and timber sued for had been delivered and used in the construction of the road-bed in Kansas, and counted for more ties and timber than had in fact been delivered in Kansas, even including the ties and timber placed along the right of way west of Brownsville, and not then used. That suit went to trial and judgment, resulting in a personal judgment against the company, but failing to establish a lien. *Held,* In a subsequent controversy about the ties and timber placed along the right of way west of Brownsville, that plaintiffs were not estopped by the allegations in the lien statement or petition from showing by parol testimony that said action was simply for ties and timber delivered, accepted and used, and did not embrace the ties and timber west of Brownsville, and which they insisted had never been inspected or accepted by the company.

2. MEMORANDUM, *Properly Received in Evidence.* Defendants, in 1876, entered into a contract with the representatives of the company to complete the road from Brownsville to Oswego. In executing such contract, they appropriated and used some of said ties and timber. *Held,* In an action by plaintiffs against defendants to recover for the value of ties and timber so appropriated, that it was proper to give in evidence the memorandum of agreement between plaintiffs and the company, for the purpose of showing whether the hauling of said ties and timber and placing them along the right of way, was a full delivery, and passed title thereto to the company.

3. MEASURE OF VALUE; *Incompetent Evidence.* In such action defendants are responsible for the value of the ties and timber, at the time and in the condition that they were when appropriated, and are not responsible for the value in 1872, and evidence of the value in 1872 is incompetent.

4. CONTRACT, CONSTRUED; *Title to Ties.* The contract between plaintiffs and the company provided that plaintiffs should receive certain specified sums for ties and timber, delivered along the line of the road, subject to the inspection and acceptance of the chief engineer of the company. *Held,* That such proviso was a provision for the benefit of the company, and might be waived by it, and if any other officer than the chief engineer, by direction of the company, inspected and accepted the ties and timber, the delivery was complete, and the title passed to the company; and this though plaintiffs never consented to an inspection by such officer.

*Error from Cherokee District Court.*

ACTION brought by *H. R. Beers* and *S. M. Sovereen,* against *B. F. Hobart* and *C. M. Condon,* to recover for their conversion of certain railroad ties, and bridge and trestle timber.

Trial at the October Term, 1880, of the district court, and judgment for the plaintiffs. New trial denied, and defendants bring the case here. The opinion states the facts.

*F. A. Bettis,* for plaintiffs in error.

*Webb & Glasse,* and *Bennett, Cowley & Hallowell,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This is an action brought in the district court of Cherokee county, by defendants in error, Beers and Sovereen, to recover from plaintiffs in error, Hobart and Condon, for railroad ties and bridge timber, which they allege were converted by said Hobart and Condon. To this petition a general denial was filed; the case was tried before a jury, and verdict rendered for plaintiffs; $300 of such verdict having been remitted, judgment was entered upon the verdict, and from such judgment defendants bring error.

In a general way, the facts may be thus stated: In 1872, plaintiffs contracted with the M. C. & N. W. Rld. Co. to furnish ties and timber for the construction of the road between Minersville, Missouri, and Oswego, Kansas. In pursuance of such contract, they did deliver a large amount of ties and timber. Shortly after the work was completed from Minersville to Brownsville, Kansas, the work ceased, on account of inability on the part of the company to complete the road. At that time, west of Brownsville, along the line of the road, plaintiffs had placed a certain amount of ties and timber. Thereafter plaintiffs brought suit against the railroad company for ties delivered and accepted, and recovered judgment, and sought to assert a mechanics' lien. During all this time, these ties and timber not used in the track remained piled along the line of the road at or near what is called by the witnesses, the Schnier place. In 1876, Seligman & Macy, the trustees of the bond-holders of said company, contracted with defendants, Hobart and Condon, to complete the road west to Oswego. In executing this contract, the defendants took pos-

session of and used certain or all of the ties and timber found at or near the Schnier place. For the value of these ties and timber thus appropriated by defendants, plaintiffs brought this action.

Evidently three questions stand out as vital: First, did the ties and timber placed at and near the Schnier place along the line of this road belong to plaintiffs? Second, if they did so belong to plaintiffs, what amount was appropriated by defendants to their use? Third, what was the value of the amount thus appropriated? That these ties and timber originally belonged to the plaintiffs, is not disputed. But the contention on the part of the defendants is, that they had been delivered to and accepted by the railroad company; that therefore they belonged to the railroad company, whether paid for or not by said company; and that in using them defendants were responsible only to the railroad company, and not to plaintiffs. Secondly, they insist that for these ties and timber, plaintiffs, affirming a delivery to the railroad company, sued and recovered judgment in the action above referred to, to foreclose a mechanics' lien, and are therefore now estopped to assert that they are still the owners. Thirdly, they insist that they did not take the amount of ties and timber which plaintiffs allege; and finally, that what they did take was not of the value charged. It will be obvious from this general statement, that a pivotal question is, whether the plaintiffs, having sued and recovered judgment against the railroad company for ties and timber delivered and accepted, were concluded thereby from showing that the ties and timber for which this action was brought were not included in such action and judgment, and were still the property of these plaintiffs, such proceedings to the contrary notwithstanding. Stating the facts a little more in detail, they are as follows: The contract of the plaintiffs with the railroad company was to furnish ties and timber along the line of the railroad between Minersville, Missouri, and Oswego, Kansas. The road was not then completed by the company to Oswego, but its construction stopped at Brownsville, Kan-

sas. In pursuance of their contract, plaintiffs delivered, both in Missouri and Kansas, an amount of ties and timber which went into the road-bed, and which were so used by the railroad company. In addition, they placed along the line of the railroad between Brownsville and Oswego, at and near the Schnier farm, an amount of ties and timber which were not in fact used in the construction of the road at that time. Believing that they had a right to a mechanics' lien by the laws of the state, plaintiffs filed a statement by which they claimed for over 20,000 ties furnished in this state, as well as for bridge timbers, and brought suit to foreclose this attempted mechanics' lien. The statement for this lien, filed by plaintiffs and verified by one of them, recited that these ties and timber were delivered in Kansas, and for the construction of the road through this state. This action against the railroad company went to trial, and judgment was rendered against the company for the amount claimed; but the lien was denied, under the authority of *Burgess v. Railroad Co.*, 18 Kas. 53. Now it is claimed by defendants that plaintiffs are concluded by this judgment—that it must be held to cover all ties which they had furnished to the company; and further, that as by their own showing they had not within this state delivered ties and timber to the amount of those sued for exclusive of these ties and timber in controversy, it must be conclusively presumed that these ties and timbers were included in that suit, and that thereby they are estopped to deny a complete delivery, or to question the title to the ties and timber thereby delivered to the company. This claim of defendants cannot be sustained. Where a petition is filed resting upon such general allegations as those in the mechanics'-lien suit, parol testimony is thereafter admissible to show what was in fact embraced within such action. That action was for ties and timber *delivered* and *accepted*. It did not purport to embrace ties and timber not accepted by the company and for which the company was not in fact responsible. As a question of fact, parol testimony is admissible to show what ties and

1. Action for railroad ties; etc., when not conclusive as to title.

timber had been delivered and accepted, and that the ties and timber in controversy in this suit were neither embraced nor intended to be embraced within the allegations of said petition. That suit was for ties and timber delivered and accepted. If these ties and timber had not been delivered and accepted, *prima facie* they were not within the scope of that petition; for it cannot be presumed that a party is wrongfully seeking to charge another with the price of property he has never fully delivered, and which is in fact still his own and under his control; and therefore, upon the general allegations of such petition, it cannot be affirmatively said that the ties and timber in controversy were included. If these ties and timber had been simply hewn and prepared and were remaining upon the lands of plaintiffs without any pretense of delivery, without any testimony that they had been hauled to and placed along the line of the road, very clearly they would not have been embraced within the scope of that petition. Under the terms of the contract between the plaintiffs and the company, the mere fact that these ties were hauled to and placed along the line of the road would not necessarily cause such a delivery and acceptance as to bind the road. The contract did not provide that the company should pay for all ties placed along the line of the road, but only for such ties as, being so placed, were after inspection accepted. Until inspection and acceptance, or something which was equivalent to a waiver thereof, the title did not pass to the company, but remained in the plaintiffs. Now if as a matter of fact these ties and timber were never inspected and accepted, and no waiver thereof was made by the company, it cannot be asserted that they were necessarily included in an action brought to recover for ties and timber delivered and accepted. It will not do to say that plaintiffs, by suing for material delivered and accepted and for which the company was bound to pay, necessarily sued for material not delivered and accepted, and for which the company was under no legal obligation to pay. It cannot be presumed that plaintiffs charged the company with anything it was under no obligations to pay for, or attempted to sue for and recover that

which it had never accepted, and which was in law and fact still the property of the plaintiffs. To state the proposition in another form: Supposing the plaintiffs had delivered ties and they alone had been accepted, and had also delivered timber which had not been accepted, and had thereafter sued for the ties so delivered and accepted, no one for a moment would contend that the title to the timber had passed to the defendants, or that the bringing of such an action affirms the title of the defendants to the timber, or that the plaintiffs might not show in a subsequent action that the timber had not in fact been accepted or was not still the property of the plaintiffs. The same principle controls here: Plaintiffs sued for ties and timber delivered and accepted; and they now say that these ties and timber were never accepted, that they had no claim therefor against the company, that they did not sue therefor in that suit; and we think parol testimony is competent to establish that fact. It is true, that in that suit there was a misstatement; plaintiffs then sought to foreclose a mechanics' lien on the railroad, believing that one was authorized by the laws of this state; and while the ties and timber which they had delivered were delivered and used both in Missouri and Kansas, their lien statement shows that all were so delivered and used in Kansas. The amount of ties and timber sued for in that action exceeded the amount delivered and sued in Kansas, together with the amount in controversy in this suit. Hence defendants contend that that petition must be held necessarily to include not only all the ties and timber used in Kansas, but also all the ties and timber placed along the line of the road and not accepted by the company. This is neither logical nor correct. Because in that suit plaintiffs claimed more than they were legally entitled to, it does not follow that they sought to recover for things outside the scope of that petition. They sought to recover for ties and timber delivered and used in Kansas, and while they erred in seeking to establish a lien for material delivered and used in Missouri, and in so doing misstated the facts, it does not follow that such error and misstatement legally compel an affirmation that they were suing

not only for property delivered and used in Kansas, but also for property which, though placed along the line of the track, had never been accepted by the company and for which the company was under no legal obligation to pay. Plaintiffs had never placed along the line of the track for purposes of delivery within the limits of the state, as many ties or as much timber as they sued for in that action. It might as well be affirmed from the mere amount of the sum sued for, that they conceded a delivery of ties never placed along the line of the track still remaining in their own fields, and never removed from the place in which they were hewn, as to say that from such mere amount they necessarily affirmed the acceptance of the ties in controversy. In short and to conclude: Wherever a petition is general in its statements, and contains no absolute identification of specific articles, it is always competent to show by parol testimony, that articles answering in some respects to those sued for were not fully within the description of such articles, and were not in fact included or intended to be included within the scope of such action. As a matter of law it cannot therefore be affirmed that the district court erred in holding that the rights of the plaintiffs were not concluded by such prior action. They may show, as they attempted to show by parol, that the property in controversy here was not embraced or intended to be embraced within the scope of said action. While it must be conceded, that as a proposition of law this is correct, we are not as a matter of fact satisfied with the explanation given by plaintiffs. It is very natural that, believing they could enforce a mechanics' lien in this state, they should seek to include within the scope of that lien, material furnished in Missouri; and while their verified misstatement throws suspicion on their entire conduct, the natural desire of a party for compensation for his material and labor, may be conceded as a satisfactory explanation of such misstatement. But the conduct of the plaintiffs in regard to the attempted levy upon that property as though it were the property of the company, and their proposition to give an indemnifying bond to the

sheriff, is not fully and satisfactorily explained to our minds. If it was plaintiffs' property, the thought of a levy upon it as the property of the company should not for a moment have been tolerated by them. The levy was of value only as it touched the property of the company, and we think there ought to be some fuller explanation of the purpose of such levy. We do not mean to assert that such levy was not susceptible of explanation, for it can well be that plaintiffs, fearing a conflict as to the title to this property, ignorant as to what testimony the company might thereafter produce with respect to inspection and acceptance, and having a judgment of large amount, whose collection was uncertain, preferred to shut off all doubt by purchasing under the execution any title that the company might claim to have. If such explanation be correct, it should be shown, for without such explanation, the conduct of the plaintiffs, speaking louder than their words, shows that this property was the property of the company, and that they did not then question the fact of its delivery, inspection and acceptance. In the rulings of the district court, in reference to this judgment and its effect upon the rights of the parties, we see no error. We refer to the matter thus at length, affirming the law as stated by the court, and indicating wherein we think the testimony deficient, because, for reasons hereafter to be stated, the judgment must be reversed and a new trial ordered, and it is fair to the trial court to indicate wherein we think its rulings were correct and wherein it erred.

Passing on to the other questions in this case, it is insisted that the court erred in admitting as evidence the following memorandum of agreement between plaintiffs and the railroad company, signed by the superintendent of the railroad company, under which plaintiffs delivered their ties and timber to the company:

"CARTHAGE, Mo., Oct. 10th, 1872.

"This agreement, made this day between H. R. Beers and S. M. Sovereen, and the Memphis, Carthage & Northwestern Railroad Co., witnesseth: That the said Beers and Sovereen are to receive thirty-five dollars per thousand, B. M., for

22—26 KAS.

all culvert and bridge timbers delivered on line of said road from Minersville to the town of Oswego, 50 cents per tie, and for second class 25 cents each, subject to the inspection and acceptance of the chief engineer of the company.

(Signed)　　E. H. BROWN,<br>
<i>Supt. M. C. & N. W. R. R.</i>"

We see no error in this ruling. The price named therein for ties and timber in 1872 did not control as to the price of

2. Memorandum properly received in evidence.

such ties and timber appropriated in 1876, but the memorandum was competent for the purpose of showing under what arrangement plaintiffs were hauling ties to the line of the road in 1872, and whether the fact that the ties and timber were so placed along the line of the road was a full and complete delivery of them to the company. The court, therefore, did not err in permitting that memorandum of agreement to go to the jury.

Again, some testimony was admitted over the objections of defendants referring alone to the value of the ties and timber

3. Measure of value; incompetent evidence.

in 1872, the time they were originally placed along the line of the road. This we think was erroneous; defendants if chargeable at all were chargeable with the value of the property they took only at the time they took it. Beyond question their appropriation of the property was in 1876, and the only testimony as to value should have been limited to that time.

Again, counsel earnestly challenges the verdict of the jury both as to the amount of property appropriated by defendants, its value, and also as to the question whether title was in plaintiffs or not. Upon these questions of fact thus challenged, we remark that they must be settled by the triers of fact, the tribunal before which the witnesses appear. Secondly, that as we read the testimony the preponderance was with the defendants, and that conceding the right of plaintiffs to recover for some property appropriated by defendants, they have obtained a judgment for more than in fact they were entitled to. Still, we repeat that upon the testimony as it appears in the record, there is that upon which the verdict of the jury

as finally sustained, may fairly rest, and that upon a mere question of fact we may not disturb the verdict, although our impressions are that the jury gave undue weight to the testimony offered by the plaintiffs. We did not see the witnesses, and if the jury and the trial court agree as to what facts are proved by the testimony, it is only, as we have often said, in an extreme case that we shall feel warranted in interfering.

One further question we shall notice — one in which we are constrained to think that the court erred, and that the error is of a nature to wrong plaintiffs in error of substantial rights. A vital question, as we have heretofore intimated, is whether the ties and timber in controversy had been in fact delivered to and accepted by the company. We have shown that the proceedings in the mechanics'-lien action were not necessarily conclusive upon this question. Now putting the record of such proceedings out of consideration, does the other testimony show that the delivery by the plaintiffs of the ties and timber along and near the line of the road, and the action of the company, whatever it was, completed a transfer of the title to the ties and timber to the company? The contract between plaintiffs and the company is in evidence. It provided that the plaintiffs were to receive a certain amount for ties and timber delivered along the line of the road, subject to the inspection and acceptance of the chief engineer. The question then is, under what circumstances title to the ties and timber so placed by plaintiffs would pass to the company. The ruling of the district court, as we understand the instructions, was to the effect that no title would pass to the company until after a personal inspection and acceptance by its chief engineer, unless both plaintiffs and the company waived such inspection and acceptance, and consented to inspection and acceptance by some other officer. Recurring to the testimony, it will be noticed that some of it tends to show that no inspection marks were on these ties and timber; some of it that these ties and timber were inspected and accepted by the chief engineer and as expressly stated in the contract; and some of it that they were inspected and accepted by an

assistant to the chief engineer, one acting under his direction, and whose actions were approved and ratified by him. Now by the instructions of the district court a personal inspection and acceptance by the chief engineer was declared essential to the transfer of title, unless both plaintiffs and the company expressly consented to the inspection and acceptance by a different officer. In view of the testimony offered in this case, we think this ruling erroneous, and we are constrained to believe that it was prejudicial to the substantial rights of the plaintiffs in error. The contract provides that the plaintiffs were to deliver ties and timber along the line of the road; that such ties and timber were to be delivered subject to the inspection and acceptance of the chief engineer of the company. That provision as to inspection and acceptance was one for the benefit of

4. Contract construed; title to ties.

the company, and might be waived by it. If it took and used the ties and timber without inspection by anybody, it became the owner, and responsible for the contract price; and if under its orders any other officer than the chief engineer inspected and accepted, it was bound by such inspection and acceptance as fully as though the chief engineer himself had examined them. Not only was it bound, but the plaintiffs were also bound. Their action was completed by the delivery along the line of the road. They thereby assented to the company's taking possession, and any act by which the company accepted the ties, perfected the transfer of title. A different question might arise as to the rights of the parties, in case some officer other than the chief engineer inspected and rejected the ties. But any acceptance binds the company, and transfers the title. In other words, such stipulation was for the benefit of the company, which might be waived by the company, and whenever waived by the company was conclusive on both parties, although such waiver was not expressly consented to by the plaintiffs. Doubtless, as the district court ruled, inspection and acceptance, or something equivalent thereto, was a condition precedent to the transfer of title; but the court erred in holding that ex-

press consent to a different inspector was essential to a transfer of title.

Whenever in a contract there is inserted a stipulation for the benefit of one party, as a general rule such stipulation may be waived by that party, and it is error to say to the jury that a waiver of such stipulation must be consented to by both parties, or is binding on neither. The rule is, that if the party benefited thereby waives it, the other may not complain. So in this case, if plaintiffs, in pursuance of their contract, did all they could do to effectuate a delivery, and the company by any officer in fact inspected and accepted the ties and timber, the company by its act has waived that stipulation which was inserted for its benefit, and the plaintiffs cannot complain because it has so waived it. We think, in view of the scope of the testimony, that this ruling of the district court was not only erroneous, but probably wrought substantial injury to the material rights of the defendants. For this error, as well as for that respecting a sufficient explanation of the circumstances concerning the levy as heretofore stated, the judgment of the district court must be reversed, and the case remanded for a new trial.

All the Justices concurring.