No. 22,868.

THE KAW VALLEY DRAINAGE DISTRICT OF WYANDOTTE COUNTY, *Appellant*, v. MISSOURI PACIFIC RAILROAD COMPANY (et al.), *Appellee.*

### SYLLABUS BY THE COURT.

1. DRAINAGE DISTRICT—*Contract to Build Riprap Work for Benefit of Railroad—Expense to be Borne by Drainage District—Right of Company Completing Work to Recover Cost Thereof.* In an action pending between the Kaw Valley Drainage District and two railroad companies, a consent judgment was entered giving the drainage district the right of way over the private property of the railroad companies and providing that the drainage district would pay the cost, not to exceed $4,000 expended in the construction of necessary riprap protection to the railroad bed and tracks. The court reserved jurisdiction of the action and parties to make any orders necessary to carry out the judgment. One of the two railroad companies performed the work and upon refusal of the drainage district to pay brought supplemental proceedings to compel payment. The court found that the railroad company had performed the work and had expended a sum in excess of $4,000 and was entitled to judgment for that amount and interest. No question having been raised in the court below as to the sole right of the one railroad company to perform the work and recover for the cost thereof, it is held too late for the drainage district to raise the question here.

2. SAME—*Character of Stone Used in Riprap Work—Waiver—Estoppel.* Instead of one-man riprap, much heavier stone was used in a considerable portion of the revetment work, which was more substantial and better construction and cost less than if one-man riprap had been used. *Held,* that as the work was being done for the benefit of the railroad company, the stipulation as to the character of the stone to be used might be waived without the consent of the drainage district, and *further held,* that there was a substantial compliance with the terms of the contract, and *held, also,* that appellant was estopped by its conduct to contend otherwise.

3. SAME—*Counterclaim Properly Disallowed.* Evidence with respect to a counterclaim for alleged delays in the work considered, and *held,* the finding of the trial court against the appellant is conclusive.

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge. Opinion filed February 12, 1921. Affirmed.

*Thomas A. Pollock,* of Kansas City, for the appellant.

*W. P. Waggener, James M. Challiss,* and *Walter E. Brown,* all of Atchison, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Originally this was an action in mandamus brought by the drainage district to compel the Missouri Pacific Railroad Company and the Union Pacific Railroad Company to raise the grade of certain railway tracks for a distance of 700 feet in order to close a gap between the high bluff on the Kansas river in Kansas City, and the end of a dike constructed by the drainage district. The tracks were about ten feet below the top of the dike. In November, 1916, a judgment was entered by consent of the parties by which the drainage district was granted a perpetual easement to construct and maintain its dike across the railway property with a provision that the drainage district should furnish certain material for filling the yards and tracks to permit the continuance of the operation of the railroad over the dike at a grade of not to exceed one per cent. The trial court reserved jurisdiction of the action and of the parties to make any orders necessary to properly carry out the judgment. The appeal is from a supplemental order of the court in favor of the Missouri Pacific Railroad Company under the following paragraph of the original judgment:

"7. From the point where said dike, as herein provided for, is constructed across the property of the defendant companies, the plaintiff is to furnish all necessary material for the filling of said defendant's property up to a point approximately fifty feet south of James street bridge, so as to enable the said defendants to secure a grade of not to exceed one per cent. The defendants shall fill out the slope with spalls, and construct one-man riprap paving, at least ten inches thick, or concrete slab paving at least four inches thick, to protect the riverward slope of its right of way and road bed, and the said plaintiff is to pay said defendants therefor the actual cost thereof up to four thousand ($4,000.00) dollars, but not to exceed in any event either the actual cost or the sum of four thousand dollars, for filling out slopes with spalls, and placing one-man riprap paving, at least ten inches thick, or concrete slab paving at least four inches thick, to protect the riverward slope of its right of way and road bed from a point approximately fifty (50) feet south of the James street bridge to the dike so to be constructed across defendant's property by said plaintiff, as herein provided for; and said sum is to be paid by said plaintiff to the defendants on completion of said work.

"This order is not to be construed as in any manner binding the plaintiff or defendant companies to maintain one-man riprap paving, or concrete slab paving, placed to protect defendant's road and property; the maintenance of same being entirely optional with the defendants."

The Missouri Pacific Railroad Company began the construction of the revetment in the early part of 1917, and completed the work in August of the same year, when a bill for $4,000 was presented to the drainage district. Payment was refused and the appellee then filed its application for an order of the court requiring payment under the conditions of the decree of November 17, 1916. The drainage district filed an answer consisting of a general denial and a defense that in constructing the dike, the appellee had not used "one-man riprap"; that the work had not been performed in conformity with the decree and had not been authorized by the district. The trial court determined the issues in favor of the appellee and found that the construction of the revetment exceeded the sum of $4,000; that the work was completed in accordance with the terms and provisions of the original judgment, and a supplemental judgment was entered requiring the drainage district to pay out of its general revenue funds $4,000 and interest thereon to the appellee. The drainage district seeks a reversal of the supplemental judgment.

The first contention is that there was neither allegation nor proof of any right in the Missouri Pacific Railroad Company alone to sue for the cost of the revetment work. Doubtless the appellant's reason for joining both railway companies as defendants in the action was the fact, well known, that the right of way for the tracks in question belonged originally to the Union Pacific Railroad Company. The record does not disclose whether it still belongs to that company; but as every one knows, it has for many years been used exclusively by the Missouri Pacific Railroad Company for the operation of its trains from Kansas City to Omaha. The contention, like most of those urged to overturn the judgment, is purely technical. The court found that the appellee had performed the work and had expended a sum in excess of $4,000 and was entitled to judgment for that amount and interest. The finding is supported by the uncontradicted evidence. Besides, it appears that the question of the sole right of appellee to recover for the cost of the revetment was not presented to the trial court and is raised here for the first time.

The principal contentions of appellant are that one-man riprap was not used in the construction and that appellant has not

Drainage District v. Railroad Co.

estopped itself from insisting upon a strict compliance in this respect with the terms of the original decree.

In engineering terms "one-man riprap" refers to the weight and dimensions of the stone used in revetment work, and means stone weighing from 25 to 125 pounds, which can be handled by one workman. The drainage engineer of the Missouri Pacific, who was in charge of the revetment work, testified that instead of "using strictly altogether one-man riprap" there was used throughout a considerable portion of the work a very much heavier stone. The wall was laid of large blocks of stone, most of which were 2 feet in the shortest dimensions and so large that one man could not handle them; they would weigh over 200 pounds. He testified that this was a more substantial and better construction than one-man riprap; that the total cost of the material and labor was nearly $7,000. He further testified as follows:

"The cost of doing this work, if it had been done with one-man riprap, would have been somewhere in the neighborhood of $800 or $1,000 more, because one-man riprap could not be obtained at that time for less than about $1.20 a cubic yard and we would have had to haul it through the congested terminals of Kansas City, Missouri; we had an opportunity to get this heavier rock at a point a little north of Kansas City and it cost us only about 75¢ a cubic yard. When I say it cost us only about 75¢ a yard I mean that that sum was the cost to dig it out without paying any quarryman's profit or anything of that sort. It would have cost us about $2 a yard, possibly more, depending on circumstances to have purchased the rock we used from an ordinary quarryman. . . . This bill does not include any charge on account of transportation; it is simply for the cost of the labor and material. . . . The material actually used was better than one-man riprap. As a matter of fact, there was some one-man riprap used, but a considerable portion of that rock would be two or three times as heavy as one-man riprap. They put it down to the bottom where it takes the shock from the water."

The contractor on the revetment work testified that he had experience in doing riprap work on the banks of other rivers, and that this construction was better than one-man riprap. His testimony was that "this is the only thing that would have stood up there. If you had put in riprap paving on the new fill that was put in there, it would never have lasted as long as it took to put it in" and that as constructed, the work would not require any repairs.

The engineer for the drainage district testified on cross-examination:

"I saw the kind of material being used in this work from time to time and made no objection to it. I was there inspecting as to the lines and slopes only. I knew the character of material and was at the work several times during the period of construction. If I had seen the Missouri Pacific putting in improper material or poor material into this improvement, I would have deemed it my duty to have objected and would have objected. I made no objection."

The work was not being done for the benefit of the drainage district, but for that of the appellee. The appellant agreed to pay a sum not to exceed $4,000 towards reimbursing the appellee for the protection of the property belonging to the latter, and because of other considerations mentioned in the decree. The undisputed evidence is that one-man riprap was used on a part of the work, while heavier and more durable stone was used in the other part; that on account of prevailing conditions it would have been impossible without additional cost to have constructed the revetment of one-man riprap exclusively. There is force in appellee's contention that one-man riprap, as mentioned in the decree, was understood by all the parties to be the minimum dimensions of the stone to be used on the revetment work. Of course, the appellant cannot be permitted to stand by until the work is completed and, with full knowledge of the character of the stone being used, remain silent and afterwards take advantage of the fact that stone of different dimensions was used from that specified. And this is especially true where the stipulation, as in this case, relating to the dimensions and character of the stone to be used, was for the benefit of the railway company. For that reason the stipulation might be waived by it without the appellant's consent.

"Whenever in a contract there is inserted a stipulation for the benefit of one party, as a general rule such stipulation may be waived by that party. . . . The rule is, that if the party benefited thereby waives it, the other may not complain." (*Hobart v. Beers*, 26 Kan. 329, 341.)

The evidence shows that the work was in progress for something like six months; that the drainage district had its chief engineer and his assistants inspecting the work, and that they knew the character of the material that was being used during the entire period of construction. They made no objection to

Drainage District v. Railroad Co.

the work or the character of the stone used, and the judgment might well be sustained upon the ground that appellant is estopped to raise this defense, aside from the ground that there was a substantial compliance with the consent judgment.

By an amended answer appellant set up a counterclaim of something like $900 alleging that in performing the dredging it was required to do under the decree, it was hindered and de-. layed by the actions of the appellee, and there was a prayer that if anything be allowed the latter, the damages sustained by appellant should be deducted therefrom. The evidence showed that the men who did the shifting of the pipe lines were paid by the Missouri Pacific; that it became necessary from time to time to change the location of the dredge line in order to permit the continuous operation of the railway and that the delays were necessary because of the location of the ground and the tracks. The appellant offered the evidence of one of the members of the drainage board who said that he was there at one time when there was a delay and that a Missouri Pacific engineer employed on the revetment_ work said the Missouri Pacific would stand for the expense of delay because it was anxious to get the work done. The consent judgment contained no provision for an allowance for delays and it is apparent that appellant seeks to rely to some extent upon this arrangement or conversation with an employee of the Missouri Pacific entirely outside of and independent of the consent judgment. The trial court heard the testimony on the counterclaim and was evidently not impressed with it and refused to allow any deduction. There are some indications that the counterclaim is an afterthought and is urged to defeat what otherwise appears to be a meritorious claim of the appellee. This court, however, is bound by the finding in appellee's favor.

In respect to the general judgment in appellee's favor it must be sustained upon the theory that the court found upon the uncontradicted evidence that there was a substantial compliance with the consent judgment and that appellant is estopped to contend otherwise. The judgment is affirmed.