ATLAS L. STOUT, et al., v. H. H. McLACHLIN, et al.

1. MECHANICS' LIEN — *Goods Ordered by Contractor.* Where mill-owners contract with A. to change their mill from an old to a new process, and A. agrees to make such change, and furnish all the material and machinery, and to guarantee results, before said mill-owners are to pay for said work; but A., without the authority or knowledge of the mill-owners, orders the mill machinery necessary to make said change, of the plaintiffs, in the name of the mill-owners; and said plaintiffs bill and ship said machinery to said mill-owners, but said machinery is received by A., and placed in the mill; and when the mill is completed, plaintiffs demand payment of the mill-owners for the purchase-price of said machinery, and this demand is the first notice or knowledge said mill-owners have that A. had ordered said mill machinery in their name; and when payment is refused, but more than sixty days after the completion of the mill, plaintiffs file

a mechanics' lien upon said mill property as contractors furnishing said machinery, and afterward bring this action to foreclose said lien: *Held*, That the court committed no error in finding for the defendants upon said facts.

2. CHARGING GOODS TO OWNER — *Evidence of Custom.* And it would make no difference, even if plaintiffs had adopted a custom by which they charged all mill-owners for the machinery ordered by millwrights or contractors, required in changing or repairing mills, unless they also show that such custom was known to the mill-owners, and that they contracted for such repairs with reference thereto.

3. PAYMENT OF FREIGHT — *Ratification, When.* And the fact that the machinery is billed and shipped to said mill-owners, and the freight bill is paid by them, would not constitute a ratification of A.'s order and purchase in their name, unless, at the time, they also had knowledge that A. had ordered the machinery in their name.

*Error from Miami District Court.*

ACTION by *The Barnard & Leas Manufacturing Company* against *McLachlin Brothers,* to recover for the value of certain mill machinery alleged to have been sold and delivered by said company to the defendants, and for a foreclosure of a mechanics' lien on the milling property of defendants, situated at Paola, Kansas. All of the plaintiffs in error were made defendants, except Stout, Mills & Temple. Subsequently, Stout, Mills & Temple commenced their action against McLachlin Brothers, asking judgment for the value of certain mill machinery alleged to have been sold and delivered to the defendants McLachlin Brothers, and for the foreclosure of their mechanics' lien on the same property, in which they made all the parties in the first suit defendants. These two cases were afterward, by order of the court, consolidated; and afterward A. W. Walburn and the Milwaukee Dust Collector Manufacturing Company filed their separate answers, each alleging indebtedness for machinery sold and delivered by them to the McLachlin Brothers; and A. W. Walburn, in addition, alleged that he had performed labor and furnished material; and both prayed for the foreclosure of their mechanics' liens on the same milling property. By agreement of the parties a jury was waived and trial had by the court at the May Term, 1885.

No special findings were made, and none were requested by either party. The court found generally in favor of the McLachlin Brothers, and against all of the defendants except A. W. Walburn, and gave judgment in his favor in the sum of $543.72. All of said plaintiffs now complain of the judgment of the court, and have brought the case here for review.

*Thos. M. Carroll, W. H. Browne, Jno. C. Sheridan,* and *Blair & Perry,* for plaintiffs in error.

*Beeson & Baker,* and *W. T. Johnson,* for defendants in error.

Opinion by CLOGSTON, C.: The only error alleged by the plaintiffs is that the court erred in its general findings in favor of the defendants. The general rule, so often announced by this court, is that where there was any evidence given tending to support all the material findings of the court, they will not be disturbed; or in other words, before this court would be warranted in reversing a case there must have been an entire failure of evidence to support the special or general findings of fact, or some one material finding or element necessary to support the judgment. Governed by this general rule, we shall examine the evidence in this case.

On May 27, 1884, defendants entered into the following written contract with one A. C. Wilson:

"First party agrees to build them a 125-bbl.-capacity roller mill, furnishing all material and labor, start it up, guarantee it to make one bbl. flour from four and one-half bus. No. 2 Kansas City wheat; flour to be as good quality as any mill in the country can produce, and to perform as good and satisfactory results; to use all the regular hands now employed by McLachlin Bros., paying them the regular wages they are worth; also to draw plans and superintend the raising of stories and roof of mill building, and building bins on top of warehouse, superintending all work, and completing same in ninety days from date, for the sum of four thousand five hundred dollars, payable when mill is completed, started, and the satisfactory results above obtained. McLachlin Bros. agree to furnish the building and all the old machinery they now have in use in the mill that can be used to advantage, but to fur-

nish nothing new; to furnish all material and work necessary in raising roof and stories of mill, and in building bins on top of warehouse. A. C. WILSON,

McLACHLIN BROS."

On the 3d day of June, 1884, the defendants turned over to A. C. Wilson, under said contract, their mill. On June 10, 1884, Wilson sent the following order to Stout, Mills & Temple, at Dayton, Ohio:

"Please send H. M. McLachlin & Bro., of Paola, Kansas, one pair double 9x15 rolls, cut for first and second brake; one pair 9x24 double, one smooth, and one pair cut for bran. He has a pair of double 9x18 Nordyke rolls I put in his mill two years ago for smooth roll. These rolls are sold on a guarantee to do as good work as the rolls I put in the Hammond mill at Springfield — to be paid for when started up, unless he should want ninety days on part of the pay, then you are to give it."

Orders similar to this were sent to each of the plaintiffs in error, in ordering the mill machinery in question. This machinery was charged by plaintiffs to McLachlin Brothers, and shipped in their name to them, at Paola, Kansas, and was received by Wilson and his foreman, and placed in the mill under Wilson's contract. About the time of the completion of the mill, plaintiffs drew sight drafts for the price of this machinery, payment of which was refused by the defendants.

To the first of these drafts the defendants made the following reply:

"PAOLA, KANSAS, October 3, 1884.

"STOUT, MILLS & TEMPLE — *Gents:* Yours to hand, and contents noted. Mr. Wilson had a contract to build us a mill, payable only when completed and result obtained. He had no authority to use our name in any manner; nor will we pay drafts for stuff ordered by him. Very truly,

McLACHLIN BROS."

A similar notice was sent to each of the plaintiffs when sight drafts were made upon the defendants for like purchases of mill machinery. In reply to this letter of October 3d, Stout, Mills & Temple wrote as follows:

"DAYTON, OHIO, October 11, 1884.

"McLACHLIN BROTHERS: In reply to your favor, we do

not know anything about the matter.   We took Mr. Wilson to be your agent.   We billed and shipped the goods to you. You will please return them, or accept them as billed.

    .   Yours truly,    STOUT, MILLS & TEMPLE."

The evidence of the defendants was clear that they had no notice or knowledge that the goods so ordered by Wilson were ordered in their name, other than what the bills of lading or invoices may have informed them; and as to these bills of lading and invoices, they say that when received, if Wilson was present they were turned over to him unopened; if not present, they were opened, and upon ascertaining that they related to machinery ordered by Wilson, they were turned over to him when he returned to the work.   It is also shown that they paid the freight upon all of this mill machinery, but that it was paid by them on account of Wilson, and charged to him on his contract.   The evidence further discloses that the mill was completed about the 3d of October.   All the plaintiffs were notified in ample time after the completion of

1. Mechanics' lien — goods ordered by contractor.

the mill, so that they might have filed sub-contractors' liens, but no liens were filed until more than sixty days thereafter, and then not a subcontractors' lien but direct liens against McLachlin Bros. for the goods delivered.   Plaintiffs also offered evidence to show that it was a custom in furnishing mill machinery and material of the kind furnished, when ordered by a millwright for the repair of a mill, to ship the goods invoiced to the owner or proprietor of the mill, and payment was always demanded of such owner.

Plaintiffs insist that as they established the fact of the custom of charging up to the mill-owner the goods when ordered by Wilson and other millwrights who were repairing mills over the country, and gave the agent a commission on the sale of the goods, that this custom of trade supersedes, as far as they are concerned, the contract made by the defendants with Wilson, without their knowledge; and we are asked, as a matter of law, to say that by reason of this custom of trade there was not sufficient evidence to sustain the findings and judgment

of the court. Upon consideration we think there is no foundation for this claim. It is true that usage and custom, under some circumstances, determine the liability of a party, but before it can, the party must have had knowledge of such custom. It is only on the ground that the party knew of the usage, and therefore supposed that he contracted with reference to it, that usage becomes admissible. This knowledge may be inferred in some cases from the nature of the business. The length of time the custom has been in existence, and the fact that the custom has become general in its application, and the like, are competent to be shown. But whether such a state of facts has been proven, is a question of fact for the court or a jury, and the proof of usage can only be received to show the intention or understanding of the parties, in the absence of specific agreement, or to explain the terms of a written contract. In *Partridge v. Insurance Co.,* 15 Wall. 375, Justice Miller, speaking for the court, said:

"This usage is confined to the establishing of an implied contract; and when the knowledge of the usage is brought home to the other party, the evil is not so great. But when it is sought to extend the doctrine beyond this, and incorporate the custom into an express contract whose terms are reduced to writing, and are expressed in language neither technical nor ambiguous, and therefore needing no such aid in its construction, it amounts to establishing the principle that a contract may add to, vary, or contradict the well-expressed intention of the parties made in writing. No such extension of the doctrine is consistent either with authority, or with the principles which govern the law of contracts."

Mr. Phillips, in his work on Evidence, says:

"Evidence of usage has been admitted in the foregoing instance of contracts relating to transactions of commerce, trade, farming, or other business, for the purpose of defining what would otherwise be indefinite, or to interpret a peculiar term, or to explain what was obscure, or to ascertain what was equivocal, or to annex particulars and incidents which, though not mentioned in the contracts, were connected with them, or with the relations growing out of them; and the evidence in such cases is admitted with a view of giving effect, as far as can be done, to the presumed intention of the parties." (10th

ed. 415. *Barnard v. Kellogg*, 10 Wall. 383; *Dixon v. Dunham*, 14 Ill. 324.)

Now in this case, by applying these rules, can it be contended that the judgment of the court below ought to be set aside, where there is an entire failure to show that the defendants had any knowledge of the custom and usage of the plaintiffs in their business relations with millwrights, or with their arrangements with Wilson, the contractor in this case, and in the face of this written contract between defendants and Wilson? To do otherwise than to affirm this judgment would be to allow this usage of trade to step in and change the position of the parties, and to impose upon the defendants conditions and liabilities never contemplated by them. A new contract would by this means be made for them, and this cannot be done. The parties by their contract left nothing to be interpreted by the laws of trade. They agreed to pay Wilson a certain stipulated sum for the completion of this mill; nothing was to be paid until the work was satisfactorily finished. Wilson agreed to furnish all labor, material and machinery to do the work with. This was definite and certain; no misunderstanding could arise that required custom or usage to interpret or make it plain.

*2. Charging goods to owner—evidence of custom.*

Plaintiffs, however, say that they thought that Wilson was the agent of the defendants, and treated his order as the order of the defendants, and say that they would not have sold the goods to Wilson on his own account. The plaintiffs show more than this; they show that they had an arrangment with Wilson, and other millwrights, by which they could sell machinery for the plaintiffs, and plaintiffs agreed with them to retain a certain per cent. for commission on said sales, to be paid to Wilson or others who ordered the machinery. In the face of this, and with this knowledge, plaintiffs insist that they supposed Wilson was defendants' agent, when in fact their own declarations go to prove that Wilson, for the purpose of selling this machinery, was their agent, and that this was a sale through him to the defendants under his contract; for it

is a well-established rule of law that where one party is authorized to sell a given article, and is to receive compensation therefor, that he cannot be treated and held as the agent of the purchaser in the same transaction. (*Raisin v. Clark*, 41 Md. 158.) This question of agency was a question of fact to be found by the court.

Again, plaintiffs contend that as they charged the bill for the machinery, and shipped the same to the defendants, and the machinery was afterward put in the defendants' mill for defendants' benefit, that they are estopped from denying Wilson's authority, and did by their silence ratify the order he gave for the machinery. In this claim the plaintiffs have more grounds for complaint. We find many of the elements of ratification clearly shown by the evidence, and in fact we see but one element wanting : that is, the want of knowledge by the defendants. In *National Bank v. Drake*, 29 Kas. 311, it was said :

"Again, ' While the acts of an agent, though unauthorized at the time, may become binding upon the principal by ratification and adoption, to make such ratification effectual it must be shown that there was previous knowledge on the part of the principal of all the material facts and circumstances attending the act to be ratified; and if the principal assent to the act while ignorant of the facts attending it, he may disaffirm it when informed of such facts.' (*Express Co. v. Trego*, 35 Md. 47; also *Coombs v. Scott*, 12 Allen, 493.) . . . The effect of ratification is to create a new contract; but a contract implies assent, and how can there be assent without knowledge?"

The defendants, at the time the goods were shipped, knew nothing of the order Wilson had sent to the plaintiffs, and, being ignorant of that fact, supposed that the goods were shipped to them because of Wilson's frequent absence from the mill, and for his convenience, so that they might be received and placed in the mill at once. They paid the freight bill, but charged the amount to Wilson; and when the knowledge did come to the defendants that the plaintiffs sought to charge them with the machinery so ordered by Wilson, they then at once notified the

3. Payment of freight—ratification, when.

plaintiffs that they had a contract with Wilson, and that noth-
ing was to be paid until after the completion of the mill, and
refused the payment demanded. This notice was given plain-
tiffs in ample time for them to have protected themselves by
filing sub-contractors' liens, and thus they might have saved
whatever was due Wilson on the contract from the defendants.
This question of ratification is another question of fact that
falls within the rule set out at the commencement of this
opinion. It was a question submitted to the court, and the
court found for the defendants. We therefore cannot disturb
the findings and judgment of the court.

It is recommended that the judgment of the court below
be affirmed.

By the Court: It is so ordered.

All the Justices concurring.