Alois Schafer, Appellant, v. William Wilson, E. L. Wilson, E. B. Tozier, Lucy B. Tozier, Porter M. Blair, The Davenport Co-operative Bank.

Reformation: MISDESCRIPTION IN INSTRUMENT. A person purchasing a lot took possession of and made improvements on the lot pointed out and deeded to him as lot No. 10, when it in fact was lot No. 9; lot No. 10 being used as, and supposed to be, a street. He then mortgaged the lot as No. 10, and made improvements thereon, and afterwards conveyed it, his grantee assuming the mortgage. *Held,* that the purchaser was the equitable owner of the lot he actually purchased and improved, and the mortgagee was entitled to have his mortgage corrected, and to a forclosure against lot No. 9, together with a persontl judgment against the grantee.

INNOCENT PURCHASER. *Notice by Possession.* One taking a mortgage on lot No. 8, erroneously described as No. 9, is not an innocent purchaser of No. 9, as against one taking possession of No. 9, which was erroneously deeded to him as No. 10, the mortgagor at the time of the mortgage being in possession of No. 8, and the actual purchaser of No. 9 being in possession of No. 9.

ESTOPPEL TO CLAIM IMPROVEMENTS. Where a person buys and takes possession of a lot No. 8, thinking it No. 9, and remains silent while improvements are made by others on No. 9, he is estopped to assert that such improvements belong to him.

*Appeal from Wappello District Court.*—HON. FRANK W. EICHELBERGER, Judge.

FRIDAY, APRIL 12, 1901.

THIS is an action to foreclose a mortgage given by the Toziers purporting to cover lot No. 10 in Hammond's addition to Ottumwa, and for personal judgment against the Wilsons, who took a conveyance from the Toziers of the premises covered by the mortgage, assuming the payment thereof. Hammond also asks foreclosure of a second mortgage, purporting to cover the same premises, also assumed by the Wilsons. The Davenport Co-operative Bank sets up a claim to lot No. 9 of the same addition, which it appears constituted the premises actually bought by the Wilsons from the Toziers, under the belief that the Toziers had title to and were conveying said premises under the description of lot No. 10. The court below rendered personal judgment for the plaintiff and for Hammond, respectively, against the Wilsons, and foreclosed the mortgage as against lot No. 10, but quieted title in the Davenport Co-operative Bank as to lot No. 9. The Wilsons appeal, as do the plaintiffs and Hammond.— *Modified and affirmed.*

*John B. Ennis* and *McNett & Tisdale* for appellants.

*W. W. Cory* for appellants Wilson.

*McElroy & McElroy* for appellee Davenport Co-op. Bank.

MCCLAIN, J.—In order to understand this controversy, it is necessary to state the relations of the parties to lots 8, 9, and 10 in Hammond's addition. These lots lie side by side, lot No. 10 being next north of a street, and lots Nos. 8 and 9, respectively, north of it. But by reason of a jog in

the street referred to as it comes to this addition through another addition, lot No. 10 has in fact been used as a street, the property south of it which was platted as a street having been by mistake occupied by the purchaser of the lot next south of the street, which is in Hammond's Second addition. By mistake of the agent of the owner of Hammond's addition, lot No. 9 was pointed out to the Toziers as lot No. 10, that which was properly lot No. 10 being assumed to be the street; and the Toziers then borrowed money from the plaintiff for the purpose of making improvements on lot No. 10, which improvements, however, were made on lot No. 9,—the lot which they were led to believe was covered by their deed; and the mortgage in controversy was by reason of the same mistake on the part of all the parties, executed on lot No. 10. By reason of a similar mistake by Blair, who purchased through the same agent the lot represented as being lot No. 9, he took possession of lot No. 8, and erected a house thereon, giving a mortgage describing the lot as No. 9 to the Davenport Co-operative Bank. The bank afterwards took a conveyance from Blair purporting to cover lot No. 9. It appears from the evidence that similar mistakes occurred in the conveyance of lots still further north. The result of the adjudication in the lower court is to give the bank complete title to lot No. 9 under its mortgage and subsequent conveyance from Blair although Blair did not improve nor occupy lot 9, and to compel the Wilsons to pay off the mortgage on lot No. 10, although the lot was unimproved, and has never been occupied, either by them or by their grantors, the Toziers. This result seems to us to be neither equitable nor just, and, without elaboration, we shall indicate what we believe to be the just and equitable solution of the difficulties arising out of the mistake on the part of the agent of the owner of Hammond's addition in pointing out the location of the lots conveyed by him to the Toziers and to Blair. It seems to us that when a certain lot, which afterward proved to be lot No. 9 of the plat, was

pointed out and sold to the Toziers, they acquired an equitable title thereto, although, as a matter of fact, by reason of mistake, the lot deeded was described as lot No. 10. For the purpose of improving this lot, which was actually lot No. 9, the Toziers borrowed the money represented by the mortgage to plaintiff, and the money thus borrowed was expended on improvements on lot No. 9, which, as we think, was the lot which the Toziers actually owned, although conveyed by an erroneous description. Plaintiff asks to have the mortgage foreclosed on lot No. 9, including the improvements thereon, and to have personal judgment against the Wilsons, who purchased from the Toziers the lot which was in their possession, and upon which the improvements were situated. We think that the court should have given to the plaintiff the relief asked, not only by rendering judgment against the Wilsons —which was done—but by directing the sale of lot No. 9, correcting the mortgage so as to conform to the facts. As between the plaintiff and the Wilsons, this relief would be in exact accordance with the understanding of plaintiff, the Toziers, and the Wilsons. The only objection which seems to be urged to this construction of the whole transaction, is that the Toziers and the Wilsons thought that the lot which they took and retained possession of was a corner lot and therefore they did not actually intend to possess and to occupy lot No. 9 because it was not the corner lot. Their mistake, however, was not with reference to the exact plot of ground which they intended to possess but with reference to its designation and surroundings. They thought that the traveled way alongside of it was the street, whereas in fact it was another lot. For any damages resulting from this mistake there might have been, or there may yet be, a remedy against the original grantor; but this mistake does not affect the identity of the particular lot intended to be occupied and improved. The Wilsons, having taken and held this lot by conveyance from the Toziers, although such conveyance contained an erroneous description, cannot now escape the liability which they assumed under such conveyance.

*Fuller v. Hunt,* 48 Iowa, 163; *Greither v. Alexander,* 15 Iowa, 470; *Sidwell v. Wheaton,* 114 Ill. 267 (2 N. E. Rep. 183). It is only where the grantee does not get the property that he can set up a defense to his contract of assumption of the mortgage lien. *Dunning v. Leavitt,* 85 N. Y. 30; *Crowe v. Lewin,* 95 N. Y. 423; *Benedict v. Hunt,* 32 Iowa, 27; *Fuller v. Hunt,* 48 Iowa, 163. With reference to the claim of the bank to lot No. 9, we are of the opinion that this claim is unfounded, being based on a similar series of mistakes to that determining the title to lot No. 9 as between plaintiff, the Toziers, and the Wilsons. Lot No. 8 was pointed out to Blair as the lot that was being sold to him, and that is the lot which he actually purchased, although he took a deed describing lot No. 9. He took possession of lot No. 8 under this conveyance, and made improvements thereon, and gave a mortgage of the lot and the improvements thereon to the bank. Subsequently he conveyed to the bank the same lot and improvements covered by his mortgage, again erroneously describing the lot as lot No. 9. The title of the bank, therefore, is to lot No. 8. It cannot be said that the bank is in any sense an innocent purchaser with reference to lot No. 9, for at the time of the mortgage Blair was in possession of lot No. 8, and lot No. 9 was, as it ever since has been, in the possession of the Toziers and their grantees, the Wilsons. Therefore the bank had notice of whatever rights the Toziers and the Wilsons had in lot No. 9.

It appears from the evidence that in a foreclosure suit between other parties relating to lot No. 8, to which the bank was also made a party, it was decreed that the bank had no title to lot No. 8; but the decree must have been erroueous, so far as the facts are shown in the present action. And whether erroneous or not, it can have no binding effect on the other parties to this action, who were not in any way made parties to that suit. The evidence as to that decree was objected to in this case, and should have been

excluded, except so far, perhaps, as the answer of the bank in that case constituted an admissiaon that the bank at the time made no claim to lot No. 9. If the decree in that suit was erroneous as to the bank,—and so far as we can now see, it was in fact erroneous,—the bank should have appealed, and had its rights protected by a review in this court.

The contention of the bank that it and its grantor have from the first been the owners of lot No. 9, that the improvements placed thereon by the Toziers were made permanent annexations to that lot, and cannot now be removed, and have become the property of the bank by such annexation, would suggest the question whether the grantor of the bank, who made his selection and purchase of the lot prior to the purchase of the adjoining lot by the Toziers, would not be estopped from setting up any claim hostile to that of the Toziers and their grantees, after having stood by and allowed the improvements on lot No. 9 to be made by them under mistake. It is true enough that Blair did not know that these improvements were being put on lot No. 9, supposing that he himself had possession of the lot of that number, but we imagine that this is immaterial. It was Blair's duty to know where his lot was located, and to know whether the improvements which the Toziers were making were upon his lot or not. Having stood by and allowed these improvements to be made, Blair could not assert title to them, nor could title be asserted by the bank, claiming under him. *Bullis v. Noble,* 36 Iowa, 618; *Ross v. Ferree,* 95 Iowa, 604; *Chapman v. Chapman,* 59 Pa. St. 214. The result is that the lower court erred in refusing to grant to the plaintiff and to Hammond foreclosure of their mortgage on lot No. 9, including improvements thereon, and in quieting the title to that lot in the bank. The personal judgments against the Wilsons for the amount of the mortgages assumed is sustained.—MODIFIED and AFFIRMED.