WESTERN NEW YORK & P. RY. CO. v. RIECKE et al.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

1. LANDLORD AND TENANT—LEASE BY HUSBAND OF WIFE'S PROPERTY—BURDEN OF PROOF.

    Where a lease, under seal, of a wife's property, did not purport to be executed by her or in her behalf, but was in fact executed by her husband, the burden of proof was on the lessee to show that she was bound thereby.

2. SAME—EQUITABLE ESTOPPEL—EVIDENCE.

    A wife saw a tenant deal with her husband as the real owner of the leased premises; took part in the negotiations for the lease, in which he purported to be such owner; expressed satisfaction with the terms of the lease; was present when it was signed by her husband and the tenant; received rents thereunder, and gave receipts in her husband's name, and knew that the tenant was making improvements on the premises in reliance on the lease. Held to estop her from disputing the title and authority of the husband as against the tenant.

3. SAME—COVENANT FOR RENEWAL.

    A provision of a lease that the lessee was to have the privilege of continuing in possession for the further period of five years was equivalent to a covenant of renewal.

**4. SAME—RENT.**

    A simple covenant of renewal for a specified term, with no provisions as to the rent, implies a renewal at the same rent as originally provided.

    Appeal from Special Term, Erie County.

    Condemnation proceedings by the Western New York & Pennsylvania Railway Company against Annar L. Riecke and others. From an order of the Supreme Court vacating and setting aside the report of commissioners in condemnation proceedings in the above-entitled matter, and directing that a new commission be appointed, defendant Walker appeals. Affirmed.

    Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

    W. F. Hofheins, for appellant.

    George E. Pierce, for respondent Annar L. Riecke.

    Frank Rumsey, for respondent Western New York & P. Ry. Co.

    HISCOCK, J. These proceedings were instituted by the above-named plaintiff and respondent for the condemnation of certain property situated in the city of Buffalo. The fee of said premises had been owned by the respondent Annar L. Riecke. The defendant Walker was a tenant in possession of a portion of said premises. The commissioners found that the entire value of such portion of said premises was $1,987.50, and that of that sum the defendant Walker, for the loss of his leasehold interest, suffered damages in the amount of $1,440. We think the damages thus allowed to the latter were excessive, and that, therefore, the order of the Special Term setting aside the report of the commissioners should be affirmed. But, while holding this view, we disagree with the learned court below as to the decision of certain material questions which arose upon the first hearing, and will arise again; and therefore, while agreeing with the result reached, are led to express our views upon these questions, and, preliminary to so doing, shall state some of the principal facts appearing.

    The defendant Annar L. Riecke in 1893 became the owner, subject to a mortgage of $500 to the defendant Wasson, of certain premises upon which were situated two houses, to each of which was apportioned substantially one-half of the land, and which premises included those involved here. June 15, 1900, the defendant Harry E. Riecke, her husband, by an instrument under seal, leased one of these houses to the defendant Walker for a term of three years from that date, with "the privilege of continuing in possession for the further period of five years." The rent reserved in said lease was $15 per month in case the tenant conducted a saloon and used an upstairs room, which he did. Walker went into possession under said lease about the date thereof. January 27, 1902, the Rieckes entered into a contract with the defendant Rea to convey to him for an express consideration said premises, reserving the right to remove the buildings. The deed under this contract was to be delivered February 15, 1902. These proceedings were commenced April 2, 1902, and the commissioners of appraisal, who were appointed without any contest, in addi-

¶ 4. See Landlord and Tenant, vol. 32, Cent. Dig. § 264.

tion to fixing the values already referred to, fixed the value of the entire premises at $4,175. The commissioners made their award of damages to the tenant Walker upon the theory that he had a valid and binding lease for the term of three years, with the privilege of five more at the same rate, and of which entire term substantially six years remained unexpired at the time of the hearing. The court at Special Term adopted the view, in substance, that the lease to Walker was in reality executed by the husband, Riecke, acting as agent for or on behalf of his wife, Annar, and that the tenant, to establish the validity of such instrument, must show that the wife and the owner of the premises was as a party bound by the lease. Starting upon this assumption, the learned court concluded that, the instrument being not only in writing, but under seal, and nowhere and in no wise purporting to be executed by or or in behalf of her, the wife was not bound thereby; that Walker had no valid or binding lease for a term of years, and was at most a tenant from year to year. Upon the premises adopted, we think the conclusion reached was correct. We do not think that Walker could hold Mrs. Riecke under the lease, and by its provisions, as a party thereto. But there is another theory upon which we think it may be found that he had a valid lease of the premises in question, and that is upon the theory of estoppel. We are of the opinion that the conduct of Mrs. Riecke, the owner of the premises, during the negotiations which preceded the execution of the lease between her husband and Walker, and her ratification of what was done by Walker under the lease after he entered upon his tenancy, amounted, upon her part, to so holding her husband out as the owner of and authorized to deal with this real estate by lease that she is now estopped from denying such right. We think that her conduct in allowing her husband, with full knowledge of all that was being done, to enter into and secure from Walker the contract in question, now precludes her from denying to the latter the full measure of his rights as established by the terms of the lease. It appears that upon the day upon which the lease is dated Walker and his attorney went to the house in which the Rieckes lived, and met both Mrs. Riecke and her husband; that the proposed lease of the other house where Walker had been living was discussed in her presence, and that she joined in that part of the discussion which related to the term of the lease, and expressed her approval of her husband's remark that it might run for three, with the privilege of five years more; that, after the preliminary discussion as to its provisions, it was drawn by the attorney in the house, and then read over to her and her husband, and that she expressed her satisfaction with its terms; that the instrument was then signed in her presence by her husband and Walker; and that before the parties separated she and her husband talked with Walker about letting certain tenants, who occupied a part of the upstairs, remain for a few weeks, until they could arrange for other quarters. After Walker had entered into possession, she frequently received the rent, and sent him a receipt in the name of her husband. Walker made various improvements, involving the expenditure of quite a considerable sum in proportion to the value of the premises, and while this was being done Mrs. Riecke was about seeing, as is stated without contra-

diction, "what was going on." These and other facts which might be cited fairly disclose that by and with the consent and acquiescence of Mrs. Riecke her husband was allowed to hold himself out as the owner of the premises, and authorized to make a lease thereof. Upon the faith of such conduct, as it may be permissible to find, Walker entered into the contract in question, and Mrs. Riecke may not now dispute the title and authority of her husband by claiming it in herself, and thereby destroy the rights which were secured upon the appearance of ownership which she created.

It is a well-settled rule of equity that, where the owner of real estate suffers another to purchase the same from a third person, and to erect buildings thereon, under the erroneous belief that he has a good title, which belief was engendered by acts or conduct upon the part of the owner, which, although undesignedly, were inconsistent with his ownership and consistent with that of the supposed owner, the real owner will not be allowed to enforce his title against the purchaser. Town v. Needham, 3 Paige, 545, 24 Am. Dec. 246; Trustees, etc., v. Smith, 118 N. Y. 634, 641, 23 N. E. 1002, 7 L. R. A. 755. It must be equally true that, where the real owner has by acts and conduct induced a belief in a prospective lessee of the premises that the title is in a third person, and permits the former to enter into a lease with the latter without disclosing the error, and observes the lessee making improvements upon the premises in reliance upon the lease, and for the purpose of increasing the value of the leasehold, such owner will be estopped from denying to the lessee the rights which he intended to acquire under his lease. It is to be remembered, as stated in Trustees, etc., v. Smith et al., supra: "It is not necessary, * * * to constitute an equitable estoppel, that there should be a false representation or concealment of material facts. Nor is it essential that the party sought to be estopped should design to mislead. If his act was voluntary, and calculated to mislead, and actually has misled another acting in good faith, that is enough. * * * When a party, either by his declarations or conduct, has induced a third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission, if the consequence would be to work an injury to such third person, or to some one claiming under him." When the evidence is examined in the light of these principles, we think it is ample to sustain a finding of a valid lease by Walker of the premises. It presents, as to Annar Riecke's conduct, all the elements of an equitable estoppel; knowledge that while she was the actual owner her husband was holding himself out as the owner, and authorized to contract as such, and of the fact that Walker was assuming obligations which would extend over a period of eight years under the belief that title was in her husband. It shows that, with an opportunity to disclose the real facts, she neglected thoughtlessly or designedly so to do, and acquiesced in the execution of the contract and in the making by Walker of improvements, which added to the value of the leasehold, and which it may well be inferred were made for that purpose in view of the long term which the lease had to run. She sat by and saw Walker deal with her husband as the real owner of the premises, and took part in the negotiations for the lease in which he

purported to be such owner, and thereafter received rents thereunder, and gave receipts in her husband's name.

We think it cannot be sufficiently answered to all of this that Walker has received value for all that he has paid; that the occupation of the premises has been worth what he paid for them in the way of rent; and that, therefore, there is wanting in this case one of the necessary elements of estoppel—that of impending injury to the party in whose favor it is claimed. Upon the faith of the husband's ownership, the tenant bound himself to the payment of rent for a term of years by a contract which he could not, upon his part, repudiate. It would have been no answer to the husband's demand for rent to say that he was not the real owner of the property. The tenant, in making the contract, took his chances upon the decline in the rental value of the premises; and now, that the movement has apparently been in the other direction, it would be inequitable to deprive him of the just fruits of his contract in this respect, as well as of the value of the improvements which he has made.

We have discussed this case upon the theory that the tenant, under the terms of his lease, was entitled to a renewal for the term of five years upon the rent originally reserved. The provisions of the lease that he was to have the privilege of continuing in possession for the further period of five years was equivalent to a covenant of renewal. Crawford v. Kastner, as Adm'r, 26 Hun, 441. And a simple covenant of renewal for a specified term, with no provisions as to the rent, implies a renewal at the same rent as originally provided. Tracy v. Albany Exchg. Co., 7 N. Y. 474, 57 Am. Dec. 538; Western Trans. Co. v. Lansing, 49 N. Y. 499, 503. Under these views the order appealed from should be affirmed with costs.

Order affirmed, with costs. All concur, McLENNAN, J., in result.