H. L. ELLIS, Appellee, v. MANNING SIMPSON, Appellee, et al., Appellant.

H. M. ILTIS, Appellee, v. MANNING SIMPSON, Appellee, et al., Appellant.

**MECHANICS' LIENS:** **Right to Lien—Consent of Owner—Naked Knowledge of Improvement.** The record owner of land is not equitably estopped from contesting the establishing of mechanics' liens on his property from the *naked fact* that he had knowledge that a

former owner (who was living on the land) was making an improvement on the land.

**Headnote 1:** 27 Cyc. p. 73.

*Appeal from Polk District Court.*—E. G. ALBERT, Judge.

MARCH 10, 1925.

THE defendant Master Truck & Tractor Company appeals from a decree in two separate actions for the foreclosure of mechanics' liens, consolidated for trial in the court below, and so submitted in this court, establishing both claims as liens upon the property described in the petition, and foreclosing the same.—*Reversed.*

*Guy A. Miller,* for appellant. ·

*M. E. Van Laningham* and *Gillespie & Canfield,* for appellees.

STEVENS, J.—Separate actions were commenced in equity by the appellees H. L. Ellis and H. M. Iltis, to foreclose mechanics' liens upon the west half of Lots 14 and 15, Bishop Place, in the city of Des Moines. The two actions were consolidated for trial in the court below, and for the purposes of this appeal. The claim of Ellis is for work and labor performed on a building erected upon the above described premises, and the claim of Iltis is for material furnished for said building under separate contracts with the defendant Manning Simpson. A personal judgment was entered on each of the claims against Simpson, who has not appealed. The labor for which appellee Ellis claims a lien was performed between June 9 and October 14, 1921. The material furnished by Iltis for the building was furnished between June 25th and October 24th of the same year. Simpson paid Ellis $90.50, and Iltis $30, on their respective claims. In January, 1919, Simpson purchased the west half of Lots 14 and 15 from one Bayless, through his agent, E. L. Ferrier, by a contract for deed. On this contract, Simpson paid $150 when it was entered into, and subsequently paid $450 in monthly payments of $50 each, leaving a balance due thereon of $750   Later

in the year 1919, Simpson purchased a truck for $3,950 from appellant, giving a note for $1,000 as the first payment thereon. Failing to make the future payments required by the contract for the truck, on May 24, 1920, Simpson and wife conveyed the above described property to appellant by warranty deed. As a part of this transaction, appellant paid the balance due Bayless, who executed a deed conveying the lots to Simpson. The deed from Simpson to appellant was recorded October 6, 1920.

In 1921, prior to June 9th, Simpson purchased a building at Camp Dodge and another building from Ellis, and had them moved upon the lots in question. On or about the above date, Ellis was orally employed by Simpson to place a foundation under the buildings and to make necessary changes therein and to construct them into a residence. About the same time, Simpson also entered into an oral contract with Iltis, who agreed to furnish the material necessary for the building. This was done between the dates above stated. Simpson having failed to pay for the labor and material furnished, separate mechanics' liens were, in due time, filed by Ellis and Iltis.

The only controversy in this court is as to the right of appellees to have their claims established as mechanics' liens against the property improved. It was contended by Simpson in the court below that the deed executed by him to appellant was intended as security only, and that appellant agreed that, when the truck, possession of which had been taken by it, was sold, the $1,000 note would be canceled and the premises reconveyed to him. The court found, however, as a matter of fact, that the deed was not intended as security; and this finding is not challenged by any of the parties.

It is not claimed by appellees that appellant was a party to the contract for labor or material, or that Simpson acted as its agent, or that any negotiations of any kind were had by them with any of its officers. They rely entirely upon an equitable estoppel, based solely upon their testimony, corroborated to some extent by other witnesses, that B. F. Prunty, president, and J. O. Jellison, vice president and manager, respectively, of appellant, together with E. L. Ferrier, the agent for Bayless, visited the premises in question on or about the 12th day of June, 1921, at which time the building moved from Camp Dodge was jacked

up, preparatory to the laying of a foundation thereunder; that Ellis, with other workmen, was employed about the premises, on which there were some piles of sand, brick, and lumber; and that, during the time they were present, Ellis overheard a conversation between Simpson and one or all of the other parties, in which they were demanding that appellant be given security on the building. No material had at this time been delivered on the premises by Iltis. There is nothing in the record from which actual knowledge on the part of any officer of appellant of the oral contract for material or of the terms of any agreement between Simpson and Ellis is shown, except such as might be inferred from the fact that Ellis was employed about the building. It is not claimed that further visits were made by the officers of appellant until late in the following October. Simpson was examined as a witness on behalf of appellees, and testified to the arrangement referred to above, under which, he claimed, appellant agreed to convey the premises to him. He did not testify that he advised anyone representing appellant of the oral contracts he had made with appellees to furnish lumber and material for the improvement of the lots.

As already indicated, the deed from Simpson to appellant was placed on record long before the oral contracts with appellees were entered into, or any labor or material was furnished thereunder. Except for the testimony of Simpson, the record is silent as to any contract or arrangement with appellant in pursuance of which Simpson placed the improvements on the lots. All of the witnesses for appellant denied emphatically that they were at the premises in June or at any other time prior to October, or that they knew that Simpson was improving the property. Jellison further testified that he never saw Ferrier until the day of the trial, and that he was not with him in an automobile at the premises in question in June, 1921, or at any other time. We gather from the record that neither Ellis nor Iltis knew that the title to the lots was in appellant.

If we assume the facts to be as claimed by appellees,—without, however, so holding,—is appellant estopped to dispute their right to have their claims established as liens upon the premises and foreclosed against the same? Is mere notice, under the facts shown, that they furnished labor and material in the im-

provement of the premises, alone sufficient to create an estoppel? It must not be assumed that appellant was charged with notice that Iltis was furnishing material for the building. There is nothing in the record from which such notice or knowledge can be inferred. Appellees did nothing in reliance upon any promise by appellant, and the most they can claim is that it was the duty of the company to advise them that the title to the property was in appellant. The record of the deed gave them constructive notice of this fact. No one on behalf of appellant is shown to have purposely or fraudulently concealed anything from appellees, or to have done anything to deceive or mislead them. It would be carrying the doctrine of equitable estoppel too far to apply it to the facts and circumstances of this case. No case cited in the briefs of counsel goes far enough to sustain such holding, and we think none can be found to that effect. The facts in many of our prior cases in which the application of the doctrine of equitable estoppel was denied, were much stronger than in the case at bar. Except for the testimony of Simpson, there is nothing in the record to throw light upon the arrangement, if any, under which he improved the property. He lived in the house a few months, and then appears to have abandoned it. Subsequently, appellant conveyed the property to Prunty, who successively leased it to various persons. The testimony of Simpson is reasonable, and suggests a somewhat satisfactory explanation of his conduct; but the overwhelming weight of the oral testimony is against him, and the court below so found. We shall content ourselves with the citation of a few cases decided by this court and by the courts of other jurisdictions, which will serve to illustrate the holding generally on the subject of estoppel, as applied to cases of this character. *Willverding v. Offineer,* 87 Iowa 475; *Webster City Steel Radiator Co. v. Chamberlin,* 137 Iowa 717; *Des Moines Sav. Bank v. Goode,* 106 Iowa 569; *Estabrook v. Riley & Armin,* 81 Iowa 479; *McCormick Harv. Mach. Co. v. Perkins,* 135 Iowa 64; *Schafer v. Wilson,* 113 Iowa 475; *Reese Gabriel & Co. v. Cornell,* 172 Iowa 734; *Cedar Rapids Sash & Door Co. v. Dubuque Realty Co.,* 195 Iowa 679; *Veale Lbr. Co. v. Brown,* 197 Iowa 240; *Helwig v. Fogelsong,* 166 Iowa 715; *Mahnke v. Marken Acres Co.,* 187 Iowa 762; *Anfenson v. Banks,* 180 Iowa 1066; *Royal Lbr.*

*Co. v. Hoelzner,* 199 Iowa 24; *Davidson v. Jennings,* 27 Colo. 187 (60 Pac. 354); *Reaves v. Meredith,* 123 Ga. 444 (51 S. E. 391); *Saunders v. Bennett,* 160 Mass. 48 (35 N. E. 111); *Stout v. McLachlin,* 38 Kan. 120 (15 Pac. 902); *Schwartz v. Saunders,* 46 Ill. 18; *Western N. Y. & P. R. Co. v. Rea,* 83 App. Div. 576 (81 N. Y. Supp. 1093); *Mellor v. Valentine,* 3 Colo. 255; *Village of Ava v. Grenawalt,* 73 Ill. App. 633; *Anderson v. Armstead,* 69 Ill. 452; *Donaldson v. Holmes,* 23 Ill. 85.

Some of these cases go very far to sustain the doctrine of estoppel. It is, of course, conceded by all parties that the right to a mechanics' lien at all is statutory, and rests upon the provisions of Section 3089 of the Code of 1897. We have made it clear that appellees do not claim that they are respectively entitled to a lien because of any contract with appellant or its agent.

We reach the conclusion that the decree of the court below cannot be sustained; and it is, accordingly,—*Reversed.*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.