# SUPREME COURT,
## STATE OF KANSAS.

## JANUARY TERM, 1911.

*PRESENT:*

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. CLARK A. SMITH,
HON. SILAS W. PORTER,         JUSTICES.
HON. ALFRED W. BENSON,
HON. JUDSON S. WEST,

W. E. HAYES, *Appellee,* v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant.*

No. 16,497.

### SYLLABUS BY THE COURT.

1. RAILROADS—*Shipment under a Written Contract—Evidence.* Where a shipper simply orders cars to be placed at a loading chute two miles distant from any station of the railroad company, loads such cars with cattle and without any contract as to the shipment, except such as the law implies, and the shipper accompanies the cattle, which are hauled in the train to the railroad station of the company, and there calls upon the station agent to prepare a contract for the shipment, which is done, and the shipper signs the contract, receives a copy thereof, proceeds on his journey and uses the contract to pay his transportation, without making any objection thereto, the shipment is held to be made under the written contract, although the shipper neither read nor had an opportunity to read the contract before entering the train.

2. —— *Notice to Carrier—Shrinkage in Weight.* Where such written contract contains this stipulation: "The shipper further expressly agrees that as a condition precedent to his right to recover any damages for any loss or injury to said

1—84 KAN.

cattle resulting from carrier's negligence as aforesaid, including delays, he will give notice in writing to the conductor in charge of the train or the nearest station or freight agent of the carrier on whose line the injuries occur before said cars leave that carrier's line and before the cattle are mingled with other cattle or removed from pens at destination." *Held*, that in case the cattle are removed from pens at destination without any notice having been given as required by this provision the shipper can not maintain an action for shrinkage of the cattle occasioned by the carrier's negligence in unnecessarily shunting and bumping the cars containing the cattle and in delaying the delivery of the cars at the destination chute for unloading.

3. ——— *Notice to Carrier—Loss of Market—Depreciation in Price.* Loss of market and depreciation in price resulting from negligent delay in the delivery of the cattle may be recovered without such notice.

Appeal from Miami district court. Opinion filed February 11, 1911. Reversed.

*John Madden,* and *W. W. Brown,* for the appellant.
*Frank M. Sheridan, Charles T. Meuser,* and *Bernard L. Sheridan,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: Hayes, the plaintiff, loaded twenty-five head of fat cattle at a loading chute at Norman, Miami county, which is about two miles from Paola, the nearest station on the defendant's line of railroad. No agreement in regard to the shipment appears to have been made, except such contract as the law implies. The train, including the cattle accompanied by the plaintiff, was drawn to the station at Paola, and the plaintiff aroused the defendant's agent and asked to have a contract written up while he was getting some breakfast. This was done. The plaintiff on his return signed the contract as prepared, without reading it, and boarded the train, which almost immediately started on its journey. The contract was shown to the

conductor by the plaintiff, in lieu of a ticket for his transportation, and was honored as such; and no objection was at any time made by the plaintiff to the terms or conditions thereof.

The train arrived at Kansas City about 8:30 in the forenoon, but was not placed at the chutes so that the cattle could be unloaded until about 11:30 A. M. of that day. When unloaded the cattle were in bad condition, heated and wet with sweat; the market had closed for the day and prices for such cattle had dropped from ten to twenty-five cents per hundredweight. Toward evening of the same day the cattle were shipped back to the plaintiff's farm, and thereafter he began this suit for damages.

In his petition he based his claim for damages upon the general allegation of carelessness and negligence of the defendant in handling the cattle. The amount claimed is $250. He recovered a verdict and judgment for $150. The petition alleged that the contract was oral; but no evidence was introduced in support thereof, except that relating to the ordering of the cars. The facts, as related by the plaintiff as a witness in his own behalf, indicate that he expected to ship on a written contract. On the trial there was evidence offered tending to support some claim for a delay of five hours in setting the cars at the chute for loading. It may be a question whether the evidence tended to support any special damage on this count, but, if so, it was waived by the following conditions of the written contract:

"As a further consideration for the reduced rate herein given the shipper hereby releases and waives any and all causes of action for damages by reason of any written or verbal contract for the shipment of said cattle or any of them prior to the execution hereof."

It is contended by the defendant that no issue of loss by lower market is to be found in the pleadings. It is true that there is no specific allegation in the petition

claiming damages on this account, but it is alleged that the defendant agreed to transport the cattle speedily and in a careful and prudent manner. If not expressly stated in the contract, the law, from the nature of the service, implies such an agreement. The petition made a general claim for damages on account of the careless and negligent handling of the cattle. In the absence of any motion to make the petition more definite and certain, we think the petition was sufficient in this respect.

The pertinent findings of the jury are, in substance, that the defendant handled the cattle from the point of shipment to destination, and did not deliver them to a connecting carrier; that the negligence of the defendent consisted in its failure to deliver the cattle promptly to the stockyards company; that the market for the class of cattle shipped did not continue from eight o'clock in the morning until three o'clock in the afternoon; that the cattle were not in good condition when placed at the chutes for unloading. The defendant moved to set aside each of these findings, except the last, as not supported by the evidence. The evidence is conflicting, but we think each finding is supported by evidence. The evidence on the one hand was that the car of cattle was set at the chutes at 8:50 o'clock A. M., and on the other that it was not until 11:30 A. M., and that for about three hours prior thereto the car had been switched and bumped around the railroad yards at Kansas City or in the vicinity thereof.

It is also contended that the court erred in permitting the plaintiff to give his opinion as to the amount of damage he suffered. As the case is likely to be retried, we suggest, since it appears that the cattle were not weighed immediately before and after the alleged injury, that loss of weight, if any, may be proved by opinion testimony from those accustomed to shipping cattle; also, that loss of weight and difference in price on the market, if any, caused by the delay should be

proved as the ultimate facts upon which the jury may draw their conclusions as to the amount of the damage. A witness should not be allowed to testify to the conclusion.

It is further contended that the fact that the defendant kept an agent at the stockyards is immaterial to any issue, and was incompetent to show that the defendant did not deliver the cattle to the St. Louis & San Francisco Railroad Company as a connecting carrier. It does tend to show that the shipment of the cattle back from Kansas City was also made under a contract with the defendant as the carrier, and is a circumstance to be considered. There was also other evidence tending to support the finding.

It is argued by the plaintiff that the defendant's agent at the stockyards was notified of the condition of the cattle before they were reshipped. In our view such evidence would have been very material in this case, but we are unable to find it in the record.

The plaintiff stated in his testimony that he based his estimate of the damage upon the shrinkage of the cattle and loss of market, and, there being no finding of the jury to indicate the contrary, it is presumed that the verdict was based upon both these elements of damage. As to loss of market, or market price, no notice provided for in the contract is requisite to a recovery. (*Railway Co. v. Poole,* 73 Kan. 466; *Railway Co. v. Fry,* 74 Kan. 546; *Cornelius v. Railway Co.,* 74 Kan. 599; *Railway Co. v. Frogley,* 75 Kan. 440; *Darling v. Railway Co.,* 76 Kan. 893.) As to the loss by shrinkage, such notice is necessary. (*Railway Co. v. Poole,* 73 Kan. 466; *Railway Co. v. Wright,* 78 Kan. 94.) The stipulated notice would convey to the defendant no information as to loss in market price, but, as to the alleged shrinkage, the object of the notice required by the contract was to give the defendant an opportunity to inspect the cattle and to ascertain for itself the extent of the loss, if any.

Again, it is said the court erred in receiving testimony that the plaintiff had not read the contract; that he had not known of two rates of shipment, and had not been offered the choice between the two rates. Under some circumstances evidence of this kind is material, but we think the plaintiff's own testimony shows that he used no diligence in informing himself as to the contents of the contract after he entered the train, and, thereafter, having used it for his transportation, he waived any objections thereto.

The defendant objects to the giving of several instructions. No. 12 became immaterial under the findings of the jury. Instructions numbered 13, 13a, and 14 are very lengthy and will not here be copied. They instruct, in substance, that if the plaintiff did not have an opportunity to read the contract and was not informed that there were two rates of shipment, and he got a lower rate by shipping under the contract, he was not bound by it. As we have seen, there was not sufficient evidence to justify the submission of this question of shrinkage to the jury. As a matter of law, it must be said, under the evidence, that the shipment was made under the written contract, or, at least, that there was not sufficient evidence to avoid the written contract.

The judgment is reversed and the case is remanded for a new trial.