No. 33,050

The State of Kansas, *Appellant*, v. James O'Leary
et al., *Appellees*.

(61 P. 2d 1325)

Opinion filed November 7, 1936.

*Richard L. Becker,* county attorney, *Raymond Belt,* assistant county attorney, *W. B. Crowther, C. W. Brenneisen, Jr.,* both of Topeka, and *Warren B. Grant,* of Independence, for the appellant.

*W. N. Banks, O. L. O'Brien, W. L. McVey, C. J. Bryant,* all of Independence, *J. A. Brady,* of Cherryvale, and *H. J. Patterson,* of Bartlesville, Okla., for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action to recover delinquent inheritance taxes on the estate of the late Mary Ellen O'Leary, a single woman, who died intestate on December 30, 1921.

At her death Miss O'Leary was the record title holder of certain town lots in Cherryvale, and other real estate in Montgomery, Labette and Comanche counties. Her only heirs were her two brothers, James and John T. O'Leary, defendants herein. Her estate was never administered under the supervision of the probate court.

The devolution of the estate did not come to the attention of the Inheritance Tax Commission until some ten years later, when on

August 4, 1931, John T. O'Leary filed an application with the commission for a determination of the inheritance taxes due on the property of the estate.

The applicant represented the value of the estate to be $40,451 and its debts and expenses of informal administration, etc., to be $1,136; and that he and his brother James were the sole heirs of the intestate. An inventory and appraisal of the estate was filed which accorded with the statements in the application. The commission accepted these statements as correct, and computed and fixed the net amount of the inheritance tax to be $879.44 when the estate devolved on the two brothers as class B heirs, half of which amount was chargeable to their respective shares of the estate under R. S. 79-1501. Certified copies of the order of assessment were filed with the probate court and with the county treasurer.

The inheritance tax not being paid, the state commenced this action to subject the property to a foreclosure of the statutory tax lien thereon. In the long interval since the death of Miss O'Leary other parties than the two brothers had acquired interests in the property—two as mortgagees or their assignees, one as purchaser at foreclosure sale, and one as purchaser by warranty deed from James and John T. O'Leary. These parties were impleaded in the action and filed answers.

The answer of the principal defendants, James and John T. O'Leary, after certain admissions and a general denial, alleged that the real estate standing in the name of their sister at her death belonged equally to themselves and to her:

"4. Defendants state the fact to be that Mary Ellen O'Leary during her lifetime, for the sake of convenience, held the real estate described in the plaintiff's petition in her name, but that in truth and in fact these defendants, James O'Leary and John T. O'Leary, had a one-third (⅓) interest each therein, and that Mary Ellen O'Leary at the time of her death had but one-third interest therein, and that her estate did not consist of thirty-nine thousand three hundred fifteen dollars ($39,315) as set forth in the plaintiff's petition, but was less than one third (⅓) of said sum."

They also alleged that—

". . . the Inheritance Tax Commission of the state of Kansas made said order [assessing the tax] by mistake in that the application upon which the order was based was made in error and was not discovered until the filing or about the time of the commencement of this action, but that said order is wrong and based upon facts which are in error, a mistake and erroneous, . . . and that in equity said order should be set aside by this court and the true facts determined herein so that said error, in equity and good conscience, may be corrected and determined."

The answers of the other defendants were in accord with that of the principal defendants. They also pleaded want of notice of the facts alleged in the petition, want of notice of the proceedings in which the inheritance tax was determined; they also invoked the fourteenth amendment, and prayed judgment in their favor.

Most of the pertinent facts were admitted without dispute. It was stipulated that after this action was begun the O'Learys applied to the Inheritance Tax Commission to change the assessment, and evidence was adduced in its support which tended to show that the deceased intestate had held the property in trust for her two brothers and herself equally. The commission took no action on this application, and no proceedings to abate the tax or to review the commission's order was instituted.

James O'Leary, called as a witness, testified that he and his brother and sister had been engaged in the contracting and grading business; that at one time another brother had been a member of the firm; that for some time their business was conducted under the name of O'Leary Brothers, and later, for 20 years, under the name of the Cherryvale Construction Company, a corporation; later again as O'Leary Brothers; that their sister Mary served as treasurer of their business and took care of their books, and that at the time of Mary's death he owned some real estate which stood in her name; that Mary did not own all the property; that it was acquired by the earnings of her brothers and herself and—

". . . that he thought it was put in Mary O'Leary's name because she would look after it better; that witness never had any actual notice served on him that the Inheritance Tax Commission had levied an assessment against him and his brother on account of the Mary O'Leary estate; that the first time he ever heard about this tax was when an attempt was made to sell a farm . . .

"The Cherryvale Construction Company . . . did not hold any real estate in its own name; if the corporation acquired any real estate witness thought it was only through his sister, Mary O'Leary, and in her name; Mary O'Leary did not have any independent income other than her interest in this corporation and in the partnership; all of the property that was acquired in Mary O'Leary's name that the witness knew anything about was not acquired by her separate, individual funds, but was acquired by either 'this corporate structure fund or the partnership funds' . . . "

The trial court made findings of fact which, in part, read:

"That although said real estate stood of record in the name of Mary Ellen O'Leary, deceased, at the time of her death, the court finds that as a matter of fact, it was in truth and in fact owned equally by said Mary Ellen O'Leary and her two brothers, John T. O'Leary and James O'Leary; that said real

estate was purchased with funds belonging to said Mary Ellen O'Leary, John T. O'Leary and James O'Leary, and that while it stood in the name of Mary Ellen O'Leary it in truth and in fact belonged one third to her and one third to John T. O'Leary and one third to James O'Leary, so that at the time of the death of Mary Ellen O'Leary she was the legal owner of only a one-third interest in said real estate above described."

On a computation of the proper assessment to be made pursuant to the quoted finding, the trial court gave judgment in favor of the state for $42.22 against James O'Leary and $42.22 against John T. O'Leary, and adjudged that the property in controversy was subject to a lien for the satisfaction thereof, and ordered a sale thereof if the judgment was not paid in ten days.

The state appeals, assigning various errors which may be summarized as a general complaint against the net result.

Here was an intestate estate. By inaction the two heirs chose to dispense with its formal administration, and assumed the rights of successors in title of their deceased sister. That they might have successfully asserted title to two thirds of the property by an independent equitable title thereto is of no consequence. They chose to assert title as heirs of their deceased sister as record holder in fee simple, and mortgaged part of the property, and conveyed part of it on that basis and not otherwise. Indeed, they made belated representations to that effect to the Inheritance Tax Commission, and it was in reliance on those representations that the commission made its assessment. Even when that assessment was made the defendants did not invoke the statutory procedure for an abatement of two thirds of the tax, or for any other reduction, on the ground set up in their answer pleaded in this action.

It has been repeatedly held that when a person claims property as heir or devisee he must pay the inheritance tax accordingly, irrespective of the fact that he might have lawfully and effectively established his right of ownership thereto by some independent title, by contract, as *cestui que trust,* or otherwise. (*State v. Mollier,* 96 Kan. 514, 152 Pac. 771; *State, ex rel., v. Gerhards,* 99 Kan. 462, 162 Pac. 1149; *Daum v. Inheritance Tax Comm.,* 135 Kan. 210, 9 P. 2d 992; *Rooney v. Inheritance Tax Comm.,* 143 Kan. 143, 53 P. 2d 500.)

Since the trial court gave full credence to the testimony to the effect that the two O'Leary brothers were tenants in common with their sister, and that each of the three owned an equitable one-third interest of it, although for their mutual convenience the record title

was placed in their sister, it is not easy to see why the brothers did not invoke the simple procedural redress supplied by the statute when the commission imposed an apparently excessive inheritance tax on the estate. (R. S. 79-1517.) That procedure was exclusive. There was no other way of avoiding the tax or of avoiding the subjection of the property to a lien for its payment. (*Finney County v. Bullard*, 77 Kan. 349, 94 Pac. 129; *State, ex rel., v. Sessions*, 95 Kan. 272, 277, 147 Pac. 789.) See, also, *In re Chicago, R. I. & P. Rly. Co.*, 140 Kan. 465, 37 P. 2d 7; and 61 C. J. 777-780.

So far as concerns the other defendants in this action, whatever interests they may have acquired in the property of Miss O'Leary's estate, those interests were subject to the state's lien for the unpaid succession tax; and they had constructive notice that such tax had not been paid. To their suggestion that they received no notice of the determination of the tax, the pertinent statute (R. S. 79-1512) does not contemplate that, before the tax may be assessed, anybody and everybody who acquires an interest after the devolution of the property must have notice, in order to make an effective and binding determination of the tax. The O'Leary heirs had notice. That fact satisfied the statutory requirement in this case.

Some other matters are suggested in the briefs, including the exclusion of some evidence belatedly offered by the state which the trial court declined to receive—a certified copy of an affidavit made by James O'Leary on October 9, 1928, and which was on record in the office of the register of deeds of Montgomery county, the purpose of which was to show that certain described properties standing in the name of the deceased intestate had passed to him and his brother because there had been no administration, that the debts of the intestate had been paid, and because affiant and his brother were the sole and only heirs. While we think this evidence should have been admitted, its exclusion was not of controlling significance, since on the whole record it is clear that the state established its cause of action and that there was no sufficient defense thereto.

It follows that the cause must be remanded with instructions to set aside the judgment and to enter judgment in favor of the state. It is so ordered.