No. 38,752

ERNESTINE PANKEY, *Appellee*, v. WYANDOTTE CAB, INC., *Appellant*.

(254 P. 2d 305)

Opinion filed March 7, 1953.

*Joseph P. Jenkins*, of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, Thomas E. Joyce, John E. Shamberg*, and *Norma Braly*, all of Kansas City, were with him on the briefs for the appellant.

*David W. Carson*, of Kansas City, argued the cause, and *J. W. Mahoney*, of Kansas City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action to recover damages for personal injuries resulting from the overturning of a taxicab in which the plaintiff was a passenger. Plaintiff recovered and defendant appeals.

Appellee Ernestine Pankey will be hereinafter referred to as plaintiff, and appellant Wyandotte Cab, Inc., as defendant.

The defendant, Wyandotte Cab, Inc., operates a cab stand, telephone and dispatching service in Kansas City Kansas. For $1.00 per day per cab, individual cab owners, licensed by the city to operate taxicabs, may avail themselves of its service. However, the city of Kansas City, by ordinance, requires that before such a service can operate, either the taxicab owners carry liability insurance for the protection of the public or, in lieu of such insurance, the owner of a cab company, such as defendant's, or a group of cab owners banded together for such purpose may create a trust fund which fund must at all times contain a minimum of $3,000 available for the

payment of judgments and just claims arising by virtue of the negligent operation of the drivers of cabs covered by such fund.

In the instant case, the defendant created such a trust fund and qualified under the city ordinance. Willie McAfee was the owner of an automobile which was licensed by the city to operate as a taxicab, and did so operate out of defendant's stand and under the trust fund of defendant. Under the provisions of the ordinance and for the purpose of maintaining such funds, each cab owner, such as McAfee, was required to deposit in such fund the sum of $1.00 per cab per day. In addition thereto, McAfee also paid $1.00 per day to defendant company for dispatching, telephone, parking, inspection, management and supervision. The mentioned amounts were paid to defendant by McAfee, driver of the cab, covering the day of the accident.

Defendant operated substantially as follows: Each cab owner, such as McAfee, would report with his cab to defendant's cab stand at the commencement of the shift to which he had been assigned, and check in with the dispatcher. The president and manager of the company would check his cab for broken windows, cleanliness, condition of tires, and if he deemed the inspection satisfactory the driver, such as McAfee, would proceed to operate the taxicab from defendant's stand, and if defendant was dissatisfied with the condition of any part of such cab, would refuse to permit such driver to so operate the cab until objectionable features were corrected. The company reserved the right to fix the hours or shifts under which said cabs should operate. On each cab, such as McAfee's, the company had painted or stenciled on the outside of the taxicab the name "Wyandotte Cab, Inc." which is the name customers call for transportation service in the city. Each taxicab was also given a number, presumably for the identification of the cab. The taxicab driven by McAfee on the occasion here involved was No. 700, which was stenciled directly above the name of the cab company. The defendant, upon receiving telephone calls for cabs, reserved the right to designate any available cab of its own choosing, unless special request is made by a customer for a specific cab. Wyandotte cabs were also permitted to pick up passengers without clearing through the cab company stand.

On July 25, 1950, the plaintiff and two other passengers hired McAfee to take them in his cab to Lone Star Lake, some distance west of Kansas City, each passenger paying the requested fare of $2.00 for such transportation. As the cab proceeded west, a tire

blew out causing the cab to swerve across the road and into the ditch, turning over several times, resulting in serious injury to the plaintiff, and the death of McAfee. The day before, McAfee's cab had been inspected by the president and general manager of defendant company. The inspection revealed that the tires on the cab were worn. One witness testified that they were worn smooth. However, the cab and the tires were passed by the manager, and its agent McAfee was permitted to go into operation under its name and as its agent without any qualification or restriction. At the time the tire blew out, plaintiff and one other passenger testified substantially that they heard a loud sound like a gun, the cab started swerving and zigzagging, and that the driver stated to his wife who was also in the car, "There goes that bad tire."

At the conclusion of all the evidence, the case was submitted to the jury which returned into court its general verdict in favor of the plaintiff, and at the same time returned their answers to certain special questions submitted to them which, in substance, found that the driver, McAfee, was operating the cab on the day in question in the furtherance of the business of the defendant, and that the negligence of the defendant consisted of failing to provide a vehicle properly equipped with good tires and tubes.

A motion for new trial was filed by defendant which was overruled and judgment was entered by the court in favor of the plaintiff on the general verdict and answers to the special questions returned by the jury.

Defendant's first contention is that its demurrer to the plaintiff's evidence should have been sustained on the ground there was not sufficient evidence that one of the cab tires actually blew out, causing the cab to overturn and injure the plaintiff.

It would serve no useful purpose for us to reiterate all the evidence in regard to the defective condition of the tires on the cab in question which was being used as a common carrier of passengers for hire, where the highest degree of care is required. Suffice it to say that after a review of all of the evidence and particularly the statement of the witnesses of the loud noise like a gunshot, the immediate swerving and zigzagging of the cab, coupled with the statement of the driver, "there goes that bad tire," together with the statement by the manager of the defendant company that the tires were worn; the evidence of another witness who stated that the tires on the cab were worn smooth and he had repaired them on several occasions; the statement of the cab driver at the time he

was loading the passengers, wherein he requested the plaintiff to get into the front seat because one of the other passengers was heavy, and he did not want to put both her and the plaintiff in the back seat because he had a bad tire on the cab, was ample to withstand defendant's demurrer to plaintiff's evidence.

Defendant next complains that the court erred in refusing to admit in evidence an ordinance of the city of Kansas City with reference to public vehicles and drivers of taxicabs.

Long ago we held in *Watt v. Jones*, 60 Kan. 201, 56 Pac. 16, that in civil actions courts will not take judicial notice of a city ordinance. In order for it to be admissible in evidence, it must be pleaded by quoting its language or stating the substance of its provisions. A reference to an ordinance by title is not sufficient. See, also, *Showalter v. Rickert*, 64 Kan. 82, 67 Pac. 454. Defendant having failed to plead the ordinance, the court did not err in refusing to admit it in evidence.

Defendant contends the evidence failed to show the cab driver was acting within the scope of his employment, and that, in fact, it disclosed he was on a private mission of his own, far outside the city limits of Kansas City where he had no right to be, and was not at the time the agent or employee of the defendant. None of the contentions are sound.

The evidence clearly discloses that he had at least three passengers in the cab; that he had received the sum of $2.00 from each, as the fare to take them to Lone Star Lake; that on the day in question he had paid to the defendant company the two $1.00 charges aforementioned; that it was in the daytime on his regularly assigned shift hours; that he had on previous occasions taken passengers outside of the limits of Kansas City, and that he was driving the cab with the name "Wyandotte Cab, Inc." stenciled on the side. We are of the opinion that in view of this and other evidence, it became a question of fact for the jury, under proper instruction of which there is no complaint, to decide whether McAfee was acting within the scope of his authority, and as the agent of the defendant company at the time in question. These questions were by the jury resolved against defendant. It is not the function of this court to weigh evidence or decide disputed questions of fact.

Defendant contends that the court erred in overruling its motion for a new trial on the ground of newly discovered evidence. It presented certain affidavits which attempted to impeach or discredit the testimony of one of plaintiff's witnesses.

No error was committed in failing to grant a new trial on this issue. The affidavits were made up largely of statements that, while the witness was an employee as testified to, he had no authority to perform certain duties to which he had testified. Some of the matter in the affidavits was impeaching, but the general rule is that new trials are not granted on account of new evidence which only goes to the general reputation of the witness for truth and veracity, or which merely discredits a witness. (*Schribar v. Maxwell,* 92 Kan. 306, 140 Pac. 865.) The remaining affidavits have been examined, and the information therein contained is not sufficient to compel the granting of a new trial.

Defendant also contends that the court erred in overruling its motion to set aside certain answers to special questions returned by the jury, and in overruling its motion for judgment on the special findings, notwithstanding the general verdict.

Our examination of the answers to the special questions reveals that they are sustained by ample evidence and are in harmony with the general verdict, and there is nothing in the answers so inconsistent with the general verdict as compels a judgment in favor of the defendant. The trial court did not err in entering judgment for the plaintiff on the general verdict.

The judgment of the trial court is affirmed.