No. 39,041

May E. Wingerson, *Appellee*, v. Arthur Tucker, *Appellant*.

(265 P. 2d 842)

Opinion filed January 23, 1954.

*L. M. Cornish, Jr.,* of Topeka, argued the cause, and *Ralph F. Glenn* and *J. R. Groff,* both of Topeka, were with him on the briefs for the appellant.

*George C. Wingerson,* of Topeka, argued the cause, and *Warren W. Shaw,* of Topeka, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This was an action to recover damages for the conversion of certain personal property. Plaintiff recovered and the defendant appeals.

The pleadings are of no importance to the questions presented and all that need be stated respecting them is that they raise all issues essential to the trial and disposition of the action.

Except as to value of the property in question there is no material discrepancy in evidence adduced by the parties during the court's trial of the case.

For that reason the following statement of events giving rise to the controversy will be based upon our construction of the import to be given the evidence without attempting to detail it at length.

Prior to September 15, 1951, the plaintiff, May E. Wingerson, under a written agreement providing that her rights as a tenant might be terminated for nonpayment of rent, was the sublessee of a portion of a business building, leased by the defendant, Arthur Tucker, and located at 621 Jackson Street, Topeka, Kansas. She occupied and used her portion of the building as a retail bakery outlet in which, with the permission of her landlord, she had installed equipment necessary for the carrying on of that business under an undisputed understanding and agreement that such equip-

ment might be removed from the building in the event of a termination of her tenancy.

On or about September 15, 1951, due at least in part to the July, 1951, flood, plaintiff, who also operated a bakery in North Topeka, was three months in arrears in rent due on her bakery outlet. Having made repeated efforts, without success, to obtain finances in which to enable her to carry on her business as a wholesale and retail baker she finally came to the conclusion it would be impossible. Thereupon she set about to wind up her business affairs, including the closing of the bakery outlet. There can be no question but what her intentions to do so were conveyed to the defendant. In any event on the date last above mentioned plaintiff, who up to that time had possession of all the keys to her portion of the building and at the moment was removing a hot water heater from the premises, delivered one of such keys to an agent of the defendant. At that time, although some of it had been removed, the major portion of the bakery outlet equipment was still in the building and it is clear that by the delivery of such key plaintiff had no intention of turning over her equipment to the defendant or giving him full possession of the premises until it had been removed.

Sometime during the day following, *i. e.*, September 16, 1951, defendant caused the locks on the doors of the portion of the building leased by plaintiff to be changed and refused her son, who had come there at her direction for the purpose of removing the remainder of the equipment, access to the premises. Thereafter, and on the same day, demand was made of defendant for possession of all equipment remaining on the property which belonged to plaintiff. This consisted of several benches, mirrors, display cases, wall cases, and miscellaneous items, most of which were still affixed to the walls and floors of the premises. Defendant refused to give possession of such property until the overdue rent was paid and plaintiff either failed or refused to pay it.

Subsequently, on September 18, 1951, plaintiff made demand of defendant for access to the premises so that the equipment could be sold. Defendant refused the demand and referred plaintiff to his attorneys. Thereafter, on two occasions, plaintiff's agent made demand on defendant's attorneys for possession of such property and was advised defendant would not permit plaintiff to have access to the property unless the rent was paid.

Following the foregoing demands plaintiff commenced this ac-

tion which, after a trial of the issues raised by the pleadings, resulted in the judgment from which the instant appeal was perfected.

Although a number of errors are assigned in appellant's specifications of error several of them are neither briefed nor argued and for that reason must be regarded as abandoned. (See *State v. Anderson,* 172 Kan. 402, 404, 241 P. 2d 742; *Blakeman v. Lofland,* 173 Kan. 725, 727, 252 P. 2d 852, and other decisions there cited.) Therefore, without further reference to questions of that character, we shall limit this opinion to a discussion of the issues subject to appellate review.

One claim of error raised but not strenuously argued is that the record fails to establish a conversion of the property in question. This claim lacks merit and requires little discussion. Based on the facts heretofore related, and other evidence to which no specific reference has been made, we are convinced the trial court properly concluded that the conversion occurred on the date appellant changed the locks on appellee's portion of the building and refused to permit her to take possession of the equipment.

Appellant next asserts that the trial court erred in establishing the proper measure of damages. This, we may add, is the principal question he raises on appeal.

The general rule, which appellant concedes, is that in an action for the conversion of personal property the measure of damages is the fair and reasonable market value of the property converted at the time of the conversion. (See *Shepard v. Pratt,* 16 Kan. 209; *Hobart v. Beers,* 26 Kan. 329; *Simpson v. Alexander,* 35 Kan. 225, 11 Pac. 171; West's Kansas Digest, Trover & Conversion, §§ 44 to 46, incl.; Hatcher's Kansas Digest [Rev. Ed.], Trover & Conversion, § 18; 53 Am. Jur., Trover & Conversion, pp. 885, 946, §§ 94, 184; 65 C. J., Trover & Conversion, p. 131, § 247.)

Directly touching the point now under consideration we find the record discloses that the measure of damages adopted by the court during the trial and used by it in determining the amount of damages for which judgment should be rendered was in line with the general rule to which we have heretofore referred. A letter written by the district judge to the attorneys for both parties states that in his judgment the plaintiff was entitled to recover the reasonable market value of the property in the condition it was in at the time it was converted by the defendant and that under all the evidence he had concluded the value of the property at the time of its

conversion was reasonably $1,000. The letter goes on to say that since it was admitted plaintiff owed defendant $265 for rent at the time he converted the property and assumed control over the building, he was rendering judgment as of the date of the letter for the plaintiff and against the defendant for $735 and costs, the value of the property as found less the amount of rent owing by plaintiff. Moreover, the journal entry of judgment recites that "The court having considered the evidence of the parties finds that the defendant converted certain personal property of the plaintiff as alleged in plaintiff's petition and that the reasonable value of said property at the time of the conversion was $1,000." And last but not least a careful analysis of the evidence reveals that at least one of appellee's witnesses, whose qualifications as a witness cannot be successfully challenged, testified that the reasonable market value of the equipment belonging to appellee and located in the building at 621 Jackson Street on September 15, 1951 (the date on which the property was converted), was $1,272.35 as used equipment. This, it is to be noted, was in excess of the value fixed by the trial court in determining the amount of damages sustained as the result of the conversion.

Thus it not only appears that the trial court used the proper measure of damages in arriving at its decision but also that there was evidence to uphold its judgment as to the amount of damages it found appellee had sustained by reason of the conversion. In that situation we can discern no sound basis for upholding appellant's contentions the measure of damages used by the trial court was erroneous or, if held to be proper, its findings as to the amount of damages was contrary to the evidence.

In an obvious effort to forestall the foregoing conclusion appellant asserts it was necessary for appellee to remove the articles in question from the premises and from that concludes and insists she was entitled to the value of the articles removed, not their value in a going and active business. We doubt the premise on which appellant founds his conclusions is warranted by the record. However that may be such conclusions are erroneous and hence entitled to no weight. The first because it flies in the face of the general rule to which we have heretofore referred and the second because of the concept, wholly erroneous, that the testimony of appellee's witnesses as to value was based upon the fair and reasonable market value of the involved equipment in a going and active business.

We find nothing in contentions advanced by the appellant respecting the admission of erroneous testimony on the part of some of appellant's witnesses as to value which, under the confronting facts and circumstances, would either compel or warrant this court in disturbing the decision rendered by the trial court.

Therefore the judgment must be and it is hereby affirmed.