No. 40,261

RICHARD H. JUKES, *Appellee,* v. NORTH AMERICAN VAN LINES, INC., a Corporation, Appellant.

(309 P. 2d 692)

Opinion filed April 6, 1957.

*Edward E. Pedroja,* of Eureka, was on the briefs for appellant.

*Thos. C. Forbes, Harold G. Forbes* and *George Forbes,* all of Eureka, were on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to recover damages from a commercial transportation company caused by the unreasonable delay in delivering household goods and furniture and for damages caused in crating, storing and transporting the same from Niceville, Florida, to Eureka, Kansas. A verdict was returned in the sum of $622.14 upon which judgment was entered. The defendant has appealed from the judgment and all other adverse rulings.

The appellee, Richard H. Jukes, hereinafter referred to as the plaintiff, filed his action against the North American Van Lines, Inc., an Indiana corporation, and L. R. Burnham, doing business as Burnham's Van Service. Service was not obtained upon the latter, and the action was dismissed against this defendant in the lower court. The appellant, North American Van Lines, Inc., will be hereinafter referred to as the defendant.

The plaintiff for his cause of action against the defendant alleged that on the 16th day of July, 1954, the defendant, by its agents and servants, entered into an oral contract with the United States Air Force through 1st Lt. Raymond H. Gaylor, the Commercial Transportation Officer at Eglin Air Force Base, Florida, whereby the defendant agreed to remove all of the household goods and furniture of the plaintiff, who at said time was a member of the United States Air Force, from the plaintiff's residence in Niceville, Florida, and store the same until such time as notice was given by the plaintiff to deliver such household goods and furniture to the new residence of the plaintiff in Eureka, Kansas, and that upon receiving such notice the defendant would transport said household goods and furniture to the plaintiff's new residence. The plaintiff then further alleged that the defendant took possession of the household goods and furniture on the 19th day of July, 1954, was notified on the 12th day of August, 1954, that the defendant should deliver his household goods and furniture to his Eureka, Kansas, address forthwith; and that said household goods and furniture were not delivered to the plaintiff's Eureka, Kansas, residence until the 29th day of September, 1954, by Burnham's Van Service. Plaintiff alleged in his first cause of action that by reason of the failure of the defendant, North American Van Lines, Inc., to deliver the household goods and furniture in accordance with the terms of their agreement, the plaintiff was required to make expenditures in the amount of $565.04 which he would not otherwise have been required to make had the household goods and furniture been delivered without delay after having been given notice on the 12th day of August, 1954. Plaintiff further alleged in a second cause of action that while the household goods and furniture were in the possession and under the control of the defendant the furniture was extensively damaged; that said damage occurred at a time unknown to and without the fault of the plaintiff, and as a result of the acts of omis-

sion or commission on the part of the defendant; and that as a result thereof plaintiff was damaged in the sum of $230.90.

Insofar as is material herein the defendant's answer specifically denied that it was liable to the plaintiff for any damage to the household goods and furniture for the reason that the defendant, North American Van Lines, Inc., did not transport any of said household goods and furniture, and for the further reason that the plaintiff had prior to the action made settlement for the damages alleged by the plaintiff with L. R. Burnham, doing business as Burnham's Van Service, who transported such household goods and furniture. The defendant further denied generally each and every other allegation in the plaintiff's petition.

Generally the evidence of the plaintiff was consistent with and in support of the allegations in his petition. Concerning the contract the plaintiff's testimony disclosed that a Mr. Broxson, manager of the branch office of the North American Van Lines, Inc., defendant, came to his residence in Florida where they agreed upon the storage and transportation of plaintiff's household goods and furniture, it being understood by Mr. Broxson that the defendant was to be paid by the government and that the household goods and furniture were to be stored until such time as the plaintiff could find a house in Eureka, Kansas, at which time plaintiff was to notify the defendant in Florida and the defendant would *immediately* ship the household goods and furniture to the plaintiff.

Plaintiff admitted that subsequent to bringing this action he received $73.80 from Burnham's Van Service for damage to his household goods and furniture admittedly caused by Burnham's Van Service in transporting said household goods and furniture, and that the $73.80 reduced the amount of his uncompensated damages to the household goods and furniture to a balance of $157.10.

A furniture man who inspected plaintiff's household goods and furniture testified on behalf of the plaintiff that it appeared plaintiff's furniture had been water-soaked, stored in a location of high humidity, and had been damaged from mildew, in addition to breakage in handling.

After hearing all the evidence admitted by the court and in due course of the trial, the jury returned a verdict for the plaintiff in the sum of $465.04 on his first cause of action, that being $100.00 less than requested by the plaintiff in his second amended petition,

and for the sum of $157.10 on his second cause of action, that being the total sum requested in the second cause of action less the $73.80 paid by Burnham's Van Service. Judgment was entered. In due course defendant's motion for a new trial, setting forth each and every statutory ground, was filed and overruled.

The questions to be determined by this court are limited. Specifications of error assigned by the defendant to the lower court's order overruling its motion to strike, its motion to make definite and certain, and its demurrer to the second amended petition of the plaintiff have neither been briefed nor argued, hence they must be regarded as abandoned. (*Collins v. Wichita Transportation Corp.*, 177 Kan. 677, 679, 281 P. 2d 1102; *Balin v. Lysle Rishel Post No. 68*, 177 Kan. 520, 521, 280 P. 2d 623; *McKay, Executor v. Parker*, 176 Kan. 526, 529, 271 P. 2d 245; *Wingerson v. Tucker*, 175 Kan. 538, 540, 265 P. 2d 842; *State v. Anderson*, 172 Kan. 402, 404, 241 P. 2d 742; See, West's Kansas Digest, Appeal & Error, § 1078 [1]; Hatcher's Kansas Digest [Rev. Ed.], Appeal & Error, § 185.) The scope of this review is therefore limited to the trial errors hereafter discussed, and to the question as to whether an acceptance of payment for damages from Burnham's Van Service, admitted by the plaintiff, constitutes a settlement which will bar plaintiff's recovery for the balance of the damages from the defendant, North American Van Lines, Inc.

It is well to digress at this point to show the confusing manner in which the defendant presented its case not only in the lower court but on review to this court. This information will also indicate the nature of the defendant's evidence and its theory in defense. The defendant in its cross-examination of the plaintiff produced a document referred to as defendant's Exhibit 1 and called it a "Bill of Lading" and then asked this question:

"Q. Now, that bears the date of July 19, 1954, would that be about the time that they were out there and loaded?

"A. That is about the time, yes."

Counsel for the defendant then addressed the court as follows:

"Your Honor, I offer defendant's Exhibit 1 in evidence. The word 'Cancelled' written on there, disregard that, it was written on there by someone."

Counsel for the plaintiff then counters with this remark:

"We object for the reason that there has been no showing that the original cannot be produced, and for the further reason that the instrument has writing on there, which is admitted was not on this at the time it was signed."

After further questions and answers defendant's Exhibit 1 was admitted by the court, with an admonition that the word "Cancelled" should be ignored.

As a matter of fact, defendant's Exhibit 1 as set out in the abstract by the defendant is entitled "U. S. GOVERNMENT FREIGHT WAYBILL—CARRIER'S COPY." It indicates that the date the bill of lading issued was "14 SEPT. 54" (not July 19, 1954); that the name of the initial transportation company was Burnham's Van Service; that the shipment was from Atwell Transfer & Storage Co., (admitted to be the agent of North American Van Lines, Inc.) Ft. Walton Beach, Florida; that the name of the shipper was the Transportation Officer, Eglin Air Force Base, Florida, and indicates that it was for a 1st Lt. Richard H. Jukes, AO2237141; that the shipment was consigned to 1st. Lt. Richard H. Jukes, c/o Eureka Motel; that the destination was Eureka, Kansas; that the issuing office was the Commercial Transportation Office, Eglin Air Force Base, Florida; that the name and title of the issuing officer was "RAYMOND H. GAYLOR 1ST LT PSAF TO B/L Symbol and No. F-2437916; that there was no pick-up service at origin; that the packages were as follows:

"No. Kind Description of Articles and Exceptions
1 LOT HHG REL VAL NOT TO EXCEED 30 CENTS
 PER LB PER ARTICLE";

that the net weight of the shipment was 1970 pounds; that there was no packing; that the name of the transportation company was Burnham's Van Service. The date of receipt of shipment was September 15, 1954.

Defendant's Exhibit 3 is entitled "COMBINED UNIFORM HOUSEHOLD GOODS BILL OF LADING AND FREIGHT BILL." On the next line are the words "FREIGHT BILL—DELIVERY RECEIPT." The following is then set out:

"BURNHAM'S VAN SERVICE
*Movers of Fine Furniture*
*1636 Second Avenue, Columbus, Georgia*
 Received, pursuant to Order for Services (if any) and subject to the classifications and tariffs, rules and regulations in effect on the date of the issue of this Bill of Lading.

 *Date* *SEPT. 15, 54*

Issued at *EGLIN AFB FT. WALTON FLA*
From *1st. LT. RICHARD H. JUKES*
Address *NORTH AMERICAN VAN LINES—*
 *ATWELL MOVING AND STORAGE*
City *FT. WALTON* State *FLA."*

In this exhibit the following appears under the heading "VALUA-TION":

"Shippers are required to declare in writing the released value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding 30 cents per pound, per article.

(Shipper or Agent)"

Under the heading "RECEIPT OF DELIVERY" in defendant's Exhibit 3 is the following:

"Services shown herein were rendered and the property described above received in good condition except as herein noted.

Carrier BURNHAM'S VAN SERVICE
Shipper 1st Lt. R. H. Jukes
By *David F. Van Haverbeke* /s/
Date *9 SEPT 54*"

It was admitted by the Plaintiff, Richard H. Jukes, that David F. Van Haverbeke signed for the furniture and household goods upon delivery at Eureka, Kansas, and with the exception of the date "9 SEPT 54" last above given the evidence all disclosed that the receipt of said household goods and furniture in Eureka, Kansas, was on the 29th day of September, 1954. Obviously, the date of September 9, 1954, is in error since this date is before Burnham's Van Service received the shipment.

The defendant contends that the plaintiff should have been limited in his recovery for damages to the household goods and furniture to a maximum of 30 cents per pound on the weight of each article of household goods or furniture damaged by reason of the released value provisions of the bill of lading.

U. S. C. A. Title 49, Sec. 20 (11), provides as follows:

"Any . . . transportation company . . . receiving property for transportation from a point in one State . . . to a point in another State . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered . . . and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such . . . transportation company from the liability imposed; and any such . . . transportation company so receiving property for transportation . . . or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, *for the full actual loss, damage, or injury to such property* caused by it or by any such . . . transportation com-

pany to which such property may be delivered . . . *notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading,* . . . and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void: . . ." (Emphasis added.)

The same section of the act provides for a lawful limitation under special circumstances. The defendant, however, made no effort to plead or prove any special circumstances under this act to show that such a limitation could lawfully be applicable in this case. In the case of *Clubb v. Hetzel,* 165 Kan. 594, 198 P. 2d 142, paragraphs 1 and 2 of the syllabus read:

"1. In the absence of proof to the contrary the liability of a common carrier for loss sustained in transporting property is presumed to be its liability under the common law.

"2. Any carrier asserting a liability for such loss, less than that imposed by the common law, has the burden of proof in establishing a contract for such limitation of liability."

In the instant case neither did the defendant plead that damages were claimed in excess of any limitation imposed under the contract, nor did the defendant introduce any evidence to show the weight of the articles damaged. The jury by its verdict resolved this question in favor of the plaintiff.

The defendant argues that the plaintiff was fully paid for any and all damages to his household goods and furniture when he accepted the check in the sum of $73.80 from Burnham's Van Service.

The endorsement on the back of the check over the signature of Richard H. Jukes reads:

"Endorsement of this check will constitute settlement in full for any and all loss or damage claimed against Burnham's Van Service, or their associates."

It must be conceded as a general rule of law that where several persons jointly commit an injury there can be but one satisfaction, and the acceptance of payment in full without reservation will operate as a bar to the further prosecution of actions for the same injury against any other persons. (*Westbrook v. Mize,* 35 Kan. 299, 10 Pac. 881; *Skaer v. Davidson,* 123 Kan. 420, 256 Pac. 155; *Wendel v. Chicago, Rock Island & Pacific Rly. Co.,* 170 Kan. 68, 223 P. 2d 993.) While the defendant may be liable for the full amount of the damages to the furniture committed by both the defendant and Burnham's Van Service, by reason of the nature of

the bailment, it does not follow that the damages were committed by a joint act of the two companies. On the contrary, the damage in crating, storing and transporting to storage would necessarily have had to have been caused by the defendant only, since Burnham's Van Service did not receive the household goods and furniture until the 15th day of September, 1954, prior to which time the defendant, North American Van Lines, Inc., was in complete possession. In no event could the two van lines have acted together or jointly. The law on separate operation and individual damage is well explained in the case of *Railway Co. v. McWherter*, 59 Kan. 345, 53 Pac. 135. This court said:

". . . The reason of the rule which renders the acceptance of satisfaction from one of two or more joint tort feasors a discharge as to all, is that the wrong is single and entire, and the injured party is entitled to one and only one satisfaction, no matter how many parties may have joined in the act. As a general rule, the nature of the case does not admit of an apportionment of the damages among the wrongdoers, but they are liable jointly and severally for the whole. When the wrongful act is not done jointly by the persons from whom compensation is sought, but is the deed of one or the other and not of both, we are unable to perceive on what principle a settlement with and discharge of one affects the cause of action against the other. Certainly it is not by way of estoppel, for the party not released is no party or privy to the arrangement, and has no joint interest with the one discharged. . . ." (p. 352.)

Furthermore, the release of one party jointly liable does not bar an action against the others liable unless it is a general release without reservation. (*Edens v. Fletcher*, 79 Kan. 139, 98 Pac. 784.) Later cases support the rule that in order for a release of one to bar actions against others, a release or covenant not to sue must be a general one, which clearly shows the intention to release all parties. (*Jacobsen v. Woerner*, 149 Kan. 598, 89 P. 2d 24.) In the case of *Wendel v. Chicago, Rock Island and Pacific Rly. Co.,* supra, the release provided for a release of "all claims to all persons" without reservation.

It follows that the receipt by Richard H. Jukes of the $73.80 as settlement in full for any and all loss or damage claimed against Burnham's Van Service did not operate as a release against the defendant.

The defendant contends that the trial court erred in refusing to admit evidence of a custom of motor vehicle transportation companies. The defendant attempted to establish the custom of van lines to hold a partial load until such time as additional freight could

be added to the load for the purpose of transporting the property shipped over long distances in interstate commerce. The trial court excluded all evidence concerning this custom, and properly so for the reason that the plaintiff pleaded a specific contract. The law has become well established that a custom may be introduced only to explain the terms of a written or an oral contract which is ambiguous. It may not be introduced to vary or change the express terms of the contract. (*Stout v. McLachlin*, 38 Kan. 120, 15 Pac. 902; *Stanly v. Buser*, 105 Kan. 510, 185 Pac. 39; *Tire Co. v. Equipment Co.*, 111 Kan. 719, 208 Pac. 659; *The State v. Wilfong*, 114 Kan. 689, 220 Pac. 250; and *Hezlep v. Oil & Gas Co.*, 112 Kan. 661, 212 Pac. 881.)

The foregoing rule is in addition to the general rule of law that any evidence of a custom to be admissible must first be shown to be known to the parties. (*Stout v. McLachlin*, supra.) In the case at bar the defendant made no attempt to show any knowledge in the plaintiff of the custom of the motor vehicle transportation companies.

It is further noted that the defendant in its answer did not make any reference to the custom which it attempted to prove, but merely filed a general denial. Under such circumstances, it was proper for the trial court to exclude evidence of the custom as not being within the issues of the case. (*Mill Work Co. v. Railroad Co.*, 112 Kan. 658, 212 Pac. 654.)

Defendant contends that the trial court erred in excluding evidence of oral and written statements made by Lt. Gaylor, the Transportation Officer for the Air Force, contained in the depositions of Mr. Broxson and Mr. Hortman. An attempt was made by the defendant to introduce into evidence the deposition of Mr. Broxson relative to conversations of Mr. Broxson, agent of North American Van Lines, Inc., with Lt. Gaylor, not in the presence of the plaintiff. The record discloses that the trial court ruled these matters on the premise that counsel for the defendant admitted that Lt. Gaylor was not the agent of the plaintiff, Richard H. Jukes. This would make the evidence inadmissible as hearsay. Other reasons exist, however, which would make the evidence inadmissible. Part of the deposition testimony of Mr. Broxson with Lt. Gaylor concerned the obligations of the defendant under government regulations. These government regulations were not pleaded by the defendant and no attempt was made by the defendant to introduce these regu-

lations into evidence. While under the provisions of G. S. 1949, 60-2878, every court of this state must take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States, it does not follow that regulations of a department of the Federal Government are entitled to judicial notice. In this respect, a regulation is in the same category as a city ordinance in civil actions. It is a fact that must be pleaded and proved just as any other fact in the case. In *Pankey v. Wyandotte Cab., Inc.*, 174 Kan. 17, 254 P. 2d 305, it was said:

"Long ago we held in *Watt v. Jones*, 60 Kan. 201, 56 Pac. 16, that in civil actions courts will not take judicial notice of a city ordinance. In order for it to be admissible in evidence, it must be pleaded by quoting its language or stating the substance of its provisions. A reference to an ordinance by title is not sufficient. See, also, *Showalter v. Rickert*, 64 Kan. 82, 67 Pac. 454. Defendant having failed to plead the ordinance, the court did not err in refusing to admit it in evidence." (p. 20.)

Furthermore, Lt. Gaylor's interpretation of the defendant's obligations under those regulations are not the best evidence and are merely conclusions of the witness. Even if it is assumed that Lt. Gaylor was the agent of the plaintiff, evidence of his conclusions of the defendant's obligations under a contract not within his knowledge are not admissible.

As to other matters in the deposition of Mr. Broxson excluded from evidence, the defendant has made no statement in its brief or showing that it was prejudiced.

The trial court excluded evidence offered in the deposition of Joseph C. Hortman, an employee of Burnham's Van Service, concerning a letter written by Lt. Raymond H. Gaylor to Lt. Richard H. Jukes, a copy of which was produced by the witness. This letter set out certain joint travel regulations concerning the shipment of household goods by a commercial transportation company with the United States Government to force, if possible, the release of the bill of lading which Richard H. Jukes refused to sign and surrender to the carrier, Burnham's Van Service, upon advice of his counsel. Among other things, the letter explained the military procedures under the regulations and what had happened to the household goods and furniture of Richard H. Jukes, and then recited:

". . . The delay in forwarding was considered unreasonable, . . ."

It was signed "Raymond H. Gaylor." For the reasons above stated, these regulations were inadmissible in evidence since they were not pleaded by the defendant. A thorough study of the letter,

considering all its aspects, reveals that the defendant was not prejudiced by its exclusion. In fact, if anything the letter was beneficial to the plaintiff, had it been admitted, to prove that the delay in receiving his furniture was unreasonable. This court has consistently held that the exclusion of evidence which would not have materially aided the complaining party is not reversible error. (*Meyer-Bridges Co. v. Warehouse Co.*, 94 Kan. 288, 146 Pac. 361; *Parker v. McLain*, 88 Kan. 657, 129 Pac. 939; *State v. O'Leary*, 144 Kan. 563, 61 P. 2d 1325; *Leach v. Urschel*, 112 Kan. 629, 212 Pac. 111; *Farmers State Bank v. Crow*, 126 Kan. 395, 399, 267 Pac. 1100.)

The defendant contends that the trial court erred in instructing the jury. Complaint is made of three specific instructions, all of which the defendant concedes to be a correct abstract statement of the law, thus not erroneous, but contends they have no application to this case. It does not appear from the record that the defendant objected to any one of these instructions at the trial, and no request was made for modification or clarification. Under such circumstances a litigant cannot be heard to complain on appeal. (*Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, 287, 139 P. 2d 859; *Krehbiel v. Milford*, 171 Kan. 302, 306, 232 P. 2d 229; *Klassen v. Creamery Co.*, 160 Kan. 697, 708, 165 P. 2d 601.)

Defendant also complains that the trial court failed to instruct on agency. On this point it does not appear from the record that the defendant requested an instruction at the trial. In *State v. Anderson*, supra, this court said:

"While it is true that it is encumbent upon a trial court to instruct the jury upon all matters of law necessary for their information in giving their verdict (G. S. 1949, 62-1447; *State v. Smith*, 161 Kan. 230, 167 P. 2d 594), a party who desires an instruction upon some particular question not included in the general charge should request that the trial judge give such instruction. Where no such request is made and the case is fairly presented to the jury, he cannot afterwards complain that the instruction was not given. The omission to instruct the jury upon some particular phase of the case for which no request was made is not error. (*Skaer v. American Nat'l Bank*, 126 Kan. 538, 540, 268 Pac. 801, and cases therein cited: *State v. Rook*, 42 Kan. 419, 22 Pac. 626; *State v. Pfefferle*, 36 Kan. 90, 12 Pac. 406; *State v. Jones*, 137 Kan. 273, 20 P. 2d 514; *State v. Nelson*, 68 Kan. 566, 75 Pac. 505.) . . ."

(For other cases see Hatcher's Kansas Digest [Rev. Ed.], Trial, § 193 and 238.)

We now turn to the last specification of error wherein the defendant complains that the trial court erred in overruling its motion for a new trial.

Primarily this action was brought by the plaintiff for damages caused by negligence in the crating, storing and transporting of his household goods and furniture, contrary to the duty of an ordinary bailee, and for damages caused by the unreasonable delay in delivering said household goods and furniture, without regard to its duty in the premises and under its contract.

It is reasonable, after examination of all the evidence disclosed by the record in its entirety, to conclude that the jury in plaintiff's second cause of action found for the plaintiff on the ground that all the damages to the household goods and furniture for which its verdict was rendered were caused prior to the time Burnham's Van Service took possession to make delivery thereof to Eureka, Kansas.

A number of cases have been before this court in which the delay in delivery, including a delay of only a few hours, constituted actionable negligence on the part of the transportation company and rendered it liable. (See, *Poultry Co. v. Railroad Co.*, 99 Kan. 540, 163 Pac. 448, and *Ott v. Railway Co.*, 102 Kan. 254, 169 Pac. 957; *Railway Co. v. Fry*, 79 Kan. 21, 98 Pac. 205; *Hayes v. Railway Co.*, 84 Kan. 1, 113 Pac. 421; *Ray v. Railway Co.*, 90 Kan. 244, 133 Pac. 847; and *Giles v. Railway Co.*, 92 Kan. 322, 140 Pac. 875.)

In *Ray v. Railway Co.*, supra, the court said:

"Section 20 (Part 1, 34 U. S. Stat. at Large, ch. 3591, p. 593) of the interstate commerce law (Carmack amendment) [U. S. C. A. Title 49, § 20 (11)] makes the carrier liable to the holder of the bill of lading, required thereby, for any damages caused by it or any other carrier to which it may deliver the property for which the bill of lading is issued or over whose line or lines such property shall pass, and no contract, receipt, rule or regulation shall exempt the initial common carrier from such liability. This provision is construed to mean that the initial carrier may not by contract, rule or regulation protect itself from damages resulting from its own negligence or from the negligence of any other carrier into whose possession the property may come by virtue of the issuance of the bill of lading. . . ." (p. 249.)

The case of *Poultry Co. v. Railroad Co.*, supra, was before this court on a demurrer to the petition. There the petition alleged a delay of eighteen hours in shipping a car of poultry from Winfield, Kansas, to New York City and it was held sufficient to state a cause of action.

While the question of pleadings in the present case is not before this court for review, counsel for both parties may have been well advised had they checked the files from the State Library in the *Poultry Co.* case and studied the pleadings framed under the Federal Statute cited in the *Ray* case.

In the *Ott* case the trial court instructed the jury that if, when the cattle were tendered for shipment, the defendant knew of conditions likely to cause delay in transportation, and the shipper did not know of these conditions, the defendant should have informed the shipper of the conditions, in order to excuse itself from liability for delay which the conditions occasioned. This instruction was held to be appropriate to the issues.

This situation is particularly applicable to the case at bar since the defendant attempted by its evidence to show that it knew there could easily be a delay in shipping the household goods and furniture of Richard H. Jukes until such time as a fully loaded van was secured. Therefore, if a partially filled van was the excuse advanced by the defendant for failure to ship immediately, this circumstance should have been explained to the plaintiff. There is no evidence in the record that it was explained or told to the plaintiff.

In conclusion it should be stated that the lower court did not err in excluding any of defendant's evidence and there was no showing made on the motion for a new trial that the defendant was in any way prejudiced by the exclusion of any of this evidence. It is the province of the jury to weigh the evidence and pass upon the facts. Upon all the evidence presented and under all the circumstances disclosed by the record in the case, the jury was justified in finding for the plaintiff in the sum for which the lower court entered judgment. The trial judge acted within his powers of discretion when he overruled the motion for a new trial.

The judgment of the trial court should be and hereby is affirmed.