No. 40,607

DIXON AND EBERT CO., INC., *Appellant*, v.
ARTHUR E. HICKS, *Appellee*.

(317 P. 2d 407)

Opinion filed November 9, 1957.

*Jay W. Scovel*, of Independence, argued the cause, and *Thomas R. Scovel*, of Independence, was with him on the brief for the appellant.

*Walter L. McVey, Jr.*, of Independence, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Plaintiff (appellant) brought this action to recover from defendant (appellee) money alleged to have been wrongfully

converted by defendant to his own use. From a verdict and judgment in defendant's favor, plaintiff appeals.

The petition alleged plaintiff's corporate existence and that defendant, an officer and employee of the corporation, wrongfully converted to his own use $11,100.00 as shown by an auditor's itemized statement attached to the petition. It alleged request for repayment, defendant's refusal, and prayed for judgment for the amount, interest and costs.

Defendant answered by way of a general denial. He further specifically stated that if any withdrawals from the corporation were made they were so made at the instance, request and order of W. E. Dixon, the president and general manager of the corporation; that Dixon insisted the withdrawals were dividends and that defendant was acting as the agent of Dixon in making the withdrawals; and that Dixon received and kept $7400.00 of such withdrawals and defendant, $3700.00. Defendant prayed that plaintiff take nothing and that he recover his costs. Plaintiff replied by way of a verified general denial. On the issues thus joined, the case proceeded to trial to a jury.

The evidence pertinent to the issues involved may be briefly summarized as follows:

With the exception of one share of stock, plaintiff corporation was owned entirely by W. E. Dixon, president and general manager, and defendant, Arthur E. Hicks, its vice president and treasurer. Dixon owned two-thirds (165 shares) of the stock, his wife, one share, and Hicks, one-third (eighty-four shares). The corporate business was plumbing, heating and appliances. In addition, it was engaged in building houses for resale. Plaintiff's offices were located in its retail store, where Hicks acted as bookkeeper and clerk. Not only did Dixon own two-thirds of the stock, but Hicks was indebted to him for his shares. For all practical purposes, the business was operated in much the same manner as though individually owned by Dixon. Defendant had very little to say in making company policy. Dixon made the decisions in the business and acted as boss. The evidence disclosed that cash discrepancies first arose when Dixon, plaintiff corporation's president, told Hicks they were paying too much income tax and he also wanted some money. For these reasons, Dixon requested that defendant withdraw cash from the corporation without reflecting such withdrawals on the books as either dividends or the reduction of capital. Hicks protested, but later consented to do

so when Dixon told him the withdrawals would be treated as dividends and would be divided in proportion to their shares of stock. Defendant began periodically withdrawing $100.00 over a period of four years, dividing the amounts each time, two-thirds to Dixon and one-third to himself, the grand total being $7400.00 to Dixon and $3700.00 to Hicks. The amounts taken and distributed by defendant as mentioned were shown on the books of the corporation. Hicks made no attempt to conceal them because he always believed they would straighten the books out. Dixon had access to the books at all times and discussed the entries with defendant. Hicks testified that neither he nor Dixon considered they were stealing from the corporation—the idea was that it was their own money and they were the only ones interested. Dixon assured him that if there should ever be an audit of the books he would say the withdrawals were a reduction of capital stock. He also stated they had more than enough money in undivided profits and did not need so large an amount. Hicks denied that he at any time wrongfully converted any of plaintiff's funds to his own use. Dixon denied that he received any portion of the money or that he authorized defendant to withdraw any funds.

At the conclusion of the evidence, the trial court instructed the jury that the burden of proof in the first instance was upon the plaintiff to establish its contentions by a fair weight and preponderance of the evidence and that the essence of the plaintiff corporation's right to recover, if any, against the defendant was the alleged wrongful and unlawful conversion by him of plaintiff's money without its knowledge or consent and the application thereof by the defendant to his own use and purposes. The court said that conversion is defined in law to be any distinct act of dominion or control wrongfully exerted over the property or money of another in denial of the right of such owner and inconsistent with such rights and before the plaintiff can recover anything from defendant in the case the jury must be satisfied by preponderance of the evidence that the money involved is the property of the plaintiff corporation and not the property of the defendant and that the defendant wrongfully and without the consent of the owner took and converted the same to his own use. The jury returned a general verdict for the defendant.

Plaintiff filed a timely motion for a new trial, which was overruled, and judgment was entered by the trial court on the verdict. Sub-

sequently, plaintiff filed a second motion to reconsider and for a new trial on the ground of newly discovered evidence. This motion was overruled, from which orders plaintiff appeals.

Plaintiff contends the jury was told that the burden of proof in the first instance was on the plaintiff to prove its right to recover by a preponderance of the evidence. This is objected to on the ground that as to some of the specific issues the burden was on the defendant and the jury should have been so instructed. There was no objection to the instruction at the time it was given and the instruction, therefore, became the law of the case. (*Jukes v. North American Van Lines, Inc.,* 181 Kan. 12, 309 P. 2d 692; *Wingert v. Mouse,* 174 Kan. 239, 255 P. 2d 1007; and cases therein cited.)

Under our statute G. S. 1949, 60-2909, *Fifth,* if plaintiff desired more specific instructions it was its duty to make a request therefor. This court has repeatedly held that the failure of the trial court to instruct specifically on a given proposition cannot properly be assigned as error when no request for such instruction was made. (*Jukes v. North American Van Lines, Inc.,* supra; *Hill v. Hill,* 170 Kan. 721, 725, 228 P. 2d 713; *Baker v. Western Cas. & Surety Co.,* 164 Kan. 376, 190 P. 2d 850; *Foley v. Crawford,* 125 Kan. 252, 264 Pac. 59.)

Plaintiff contends that defendant set up an affirmative defense. There is nothing in the record to warrant such a contention. Defendant denied he wrongfully took the money and he asked no affirmative relief. It has been stated that a general instruction that the plaintiff has the burden of proving a right to recover is not objectionable, although some issues are involved as to which the burden is on the defendant. (*Hail Association v. Surety Co.,* 97 Kan. 271, 155 Pac. 13; *Thompson v. Dyson,* 120 Kan. 591, 244 Pac. 867.)

Plaintiff asserts that inasmuch as the defendant retained $3700.00 and Dixon twice that amount it was entitled to judgment against defendant for $3700.00 and a new trial should be ordered. The trouble with plaintiff's contention is that the case was not tried on that theory. The pleadings were framed and the case was submitted to the jury on the definite theory that defendant wrongfully converted plaintiff's money to his own use. The jury, by its general verdict, found this issue in favor of the defendant. Inherent in that verdict was a finding of no wrongful conversion upon the part of defendant. Plaintiff's contention is without merit.

Plaintiff finally contends that it should be granted a new trial on the ground of newly discovered evidence. At no place in the record is it revealed that any newly discovered evidence was presented to the trial court other than that which would have been available had the plaintiff used due diligence in obtaining it at the time of the trial, inasmuch as the statements contained in the proffered affidavit were at all times within the knowledge of its president, Dixon. Moreover, assuming the statements therein contained were correct, at most they could be but cumulative.

After a careful examination of the entire record and the theory upon which the case was tried and submitted, we find no error to justify a reversal. The judgment is affirmed.